## Jesse Hoyt v. John Jeffers.

*Mill-owners: Sparks from chimney setting fire to neighboring buildings: Negligence: Circumstantial evidence.* In an action to recover damages of a mill-owner for the destruction of plaintiff's buildings by fire communicated by sparks emitted from the mill chimney, in the absence of direct evidence that a spark was then seen to come from the chimney, and to alight upon the buildings and set them on fire, circumstantial evidence as to the habit of the chimney in emitting live sparks, which were accustomed, especially when the wind was in the direction it was in when the plaintiff's buildings burned, to set fire to the sidewalk, sawdust, clothes upon the line, etc., in the neighborhood of plaintiff's buildings, is competent; and the admission of such evidence of circumstances happening a considerable time prior to the fire in question, and while the mill and the chimney were shown to have been used in the same way, and to be substantially in the same condition, so far as any effect upon the throwing of sparks was concerned, is not error; nor is the admission of evidence of the taking fire of another building, from the same cause, and under the same circumstances, after the fire in question, erroneous.

*Notice: Mill-owner: Foreman.* In the absence of the owner, notice to the foreman of the mill, that the sparks from the chimney were endangering adjacent property, is equivalent to notice to such owner.

Hoyt *v.* Jeffers.

*Notice: Negligence: Evidence.* Evidence of such notice is admissible, though the liability may not depend upon actual notice; for, with notice, the defendant might justly be held to a somewhat stricter measure of diligence than without it; and, to some extent, this might make that negligence which otherwise would not be so.

*Diligence: Negligence: Other similar mills: Spark-catchers.* The question of diligence or negligence always depends upon and partakes of the surrounding circumstances peculiar to each particular case; and the fact that other mill-owners, or the large majority of them, having mills with brick chimneys, did not use spark-catchers, would not authorize defendant to omit the use of one, nor would it be at all pertinent to the case, at least without some showing that such other mills were similarly situated as to surrounding property.

*Mills: Chimneys: Escape of sparks: Endangering surrounding buildings: Notice: Apparatus to prevent emission of sparks: Duty of mill-owner: Negligence.* When a mill is situated in the midst of a city, with numerous dwellings, hotels, shops, and other buildings in close proximity and mostly of wood, and the mill chimney, without any apparatus or appliance for arresting the escape of sparks, frequently throws out sparks and burning material to such an extent as to endanger surrounding buildings, and especially if the proprietor have notice of the danger, it becomes both his moral and his legal duty to avail himself of such well-known apparatus or other means as experience has shown to be reasonably adequate to prevent the escape of sparks, whether such apparatus has previously been used on that particular kind of chimney or not, provided it be in its nature and operation susceptible of being applied to that kind of chimney, and would operate to check the escape of such fire and sparks, if so applied.

*Negligence: Evidence: Spark-catchers.* Evidence as to the use and effect of spark-catchers on steamboat and locomotive smoke-stacks, and the iron smoke-stacks of mills, etc., is held to have been admissible in this case.

*Mill chimneys: Escape of sparks: Duty of proprietor: Negligence.* The proprietor of such a mill, so situated, is bound, in adopting means to check the flow of sparks, not only to adopt means calculated to avert the danger, but the means which, in the progress of science and improvement, have been shown by experience to be the best, unless it be some recent invention, not generally known, or unreasonably expensive.

*Charge to the jury: Negligence: Mill chimneys: Sparks.* A charge to the jury in such an action, that if the erection and operating of defendant's mill endangered the plaintiff's property, it was the duty of the defendant, in so erecting and operating it, to use such precaution and such means to lessen the danger and prevent the injury, as a prudent man, conversant with the business and the danger and all the surroundings, would have used, and that if he fell short of this, or operated his mill with less care or caution than a prudent man would use under such circumstances, and a loss thereby accrued to the plaintiff, he would be liable, is sustained.

*Requests to charge: Charge to the jury.* The refusal of requests to charge is not error, where their substance, so far as they are correct in principle, is embodied in the general charge.

*Requests to charge: Negligence: Actual damage: Danger.* A request to charge, in such an action, that if defendant's mill had been operated for a long period without having caused damage, etc., and such chimneys and furnaces are in general use without any other precautions than defendant used against the spread of fire, the fact that defendant did not use precautions that have been deemed necessary and generally used on circular smoke-stacks, or chimneys of different construction, is not entitled to any weight as proof of negligence, is held objectionable in that it confined the attention of the jury too much to

the question of the mill having actually caused damage, while the real inquiry on this subject was, whether the chimney, in the mode it was used, endangered the surrounding property.

*Mill chimneys: Spark-catchers: Negligence.* This request is also objectionable in that it makes the use of other mill chimneys without spark-catchers the measure or test of defendant's duty to use this precaution, without reference to the question whether the other mills were similarly situated with respect to surrounding property.

*Fires: Negligence: Measure of damages: Burned buildings: Proximate cause.* When a fire caused by the negligence of the defendant passes from one building of plaintiff's to another situated on the same lot, and but five or six feet distant from the first, without any other cause than simply the fire naturally burning and consuming the first building, and without any contributory negligence of the plaintiff, it is not error to hold the defendant liable for the burning of the second as well as the first building; his liability cannot be confined simply to the burning of buildings in actual contact with the one first set on fire.

*Burned buildings: Negligence: Intervening space: Proximate cause.* Even where such second building is at such a distance from the first that its taking fire from the first might not, *a priori*, seem possible, yet if it be satisfactorily shown that it did in fact thus take fire without any negligence of the owner or any fault on the part of any third party which could be properly recognized as the proximate cause, and for which he could be held liable, the party through whose negligence the first building was burned cannot on principle be held exempt from equal liability for the burning of the second.

*Rule of damages.* To the argument that such a rule of damages might prove ruinous to the party through whose negligence the buildings were burned, it is answered, that, under such circumstances, it is better, and more in accordance with the relative rights of others, that he should be ruined by his negligence, than that he should be allowed to ruin others who are innocent of all negligence or wrong.

*Heard July 10. Decided October 7.*

Error to Saginaw Circuit.

*John J. Wheeler* and *Pond & Brown* for plaintiff in error.

*I. M. & H. P. Smith* and *Gaylord & Hanchett* for defendant in error.

CHRISTIANCY, J.

Jeffers brought his action against Hoyt in the circuit court for the county of Saginaw.

The declaration sets forth, substantially, in the first count, that plaintiff, on the 17th August, 1870, being the owner of lot 1, block 19, Hoyt's plat of the city of East Saginaw, together with the frame buildings thereon situate (which the evidence shows to have been a hotel called the Sherman

House, a barn, shed and wash-house, on the same lot, used with the hotel), of the value of ten thousand dollars; and the defendant being the owner, and running and operating a steam saw-mill, situated on block four of the same plat, distant about three hundred feet southwesterly from plaintiff's property, he (the defendant), in running and operating the steam saw-mill, used large fires, which emitted and gave off large quantities of sparks of fire through the chimney; that it was the duty of defendant to have used upon said chimney a spark-catcher, which would have prevented the escape of such sparks, or in some other way to have prevented their escape, so that the fire would not be thereby communicated to the property of the plaintiff; yet the defendant, knowing the premises, and that sparks of fire had been repeatedly thrown from said mill upon the property of the plaintiff, and that his buildings had been repeatedly set on fire by such sparks, omitted to do his duty in that behalf, and negligently suffered the top of the chimney of his said mill to remain open, without a spark-catcher thereon, and without using any adequate means to prevent the escape of sparks from the chimney; and while defendant, his agents and servants, were running and operating the mill, to-wit., etc., sparks of fire from the chimney of said mill were thrown upon the plaintiff's buildings, and said buildings were thereby set on fire and totally consumed, to plaintiff's damage, etc.

The second count more particularly describes the plaintiff's buildings, and gives their distance from the mill, as, "to wit: two hundred feet," and, apparently as a ground of special damages, states their rental value, and alleges that in running the mill large quantities of sparks were thrown off; and unless restrained by spark-catchers or some other means, would be carried by the wind from two hundred to one thousand feet in the direction of the wind, and there thrown down and deposited in a live and incandescent condition upon the buildings and other property there situated, thereby endangering the destruction of such property by

fire; alleges the duty of the defendant to prevent such dangerous escape of sparks; avers defendant's knowledge of this, and that plaintiff's buildings had in this manner been repeatedly set on fire, the omission of defendant to perform the duty alleged, and his neglect to use reasonable and necessary precautions and means to prevent the danger, and that plaintiff's buildings were burned and destroyed by fire, by the sparks and fire thrown from said chimney, in the manner in this count described.

The third count, after describing the property of plaintiff, the situation and use of defendant's mill, its emission of sparks, etc., and defendant's knowledge of the danger (which is alleged to have existed for a long time prior to the fire complained of), without expressly averring the duty of defendant, alleges that " by defendant's operating and using said mill with such fires in a careless and negligent manner, and without taking proper and reasonable means and precautions to prevent such danger and exposure to said buildings, and to prevent burning materials and sparks of fire from escaping from said mill and falling on said buildings, the said hotel and other buildings of plaintiff were set on fire by said burning materials and sparks escaping from said mill,    *    *    and destroyed, and the plaintiff avers that said damage and destruction was caused by the negligence of the defendant in operating said mill and by his neglect to take such precautions as aforesaid."

The plea was the general issue.    The case was tried before a jury, who returned a verdict for the plaintiff at five thousand five hundred and thirty-three dollars and thirty-three cents, and the defendant brings the case to this court upon writ of error and bill of exceptions.

The mill appears to have been built in 1854, and the plaintiff's hotel the same year; which was commenced or finished first does not conclusively appear, and from the evidence the jury might have found the fact either way. The defendant seems to have purchased the mill some time after it was built; and it was not disputed that the mill

30 MICH.—24.

was owned and run by him from about 1863 or 1864 down to the time of the fire, though he personally resided in New York.

The chimney was a square brick chimney, originally about seventy feet high, but in the spring of 1870 about twelve or twelve and one half feet were added to the height; but neither before nor after the addition did it have any spark-catcher on it, nor what was called a butterfly valve, with wire netting, nor a hole behind the boiler for the sparks to fall into, so far as the evidence shows. The Sherman House was situated about two hundred and thirty-three feet to the northeast of the mill, and on the other side of the street from it.

There was evidence on the part of the plaintiff relating to the particular time of the fire, which tended to show that the plaintiff's buildings were set on fire and burned by a spark from the mill chimney, though the spark was not seen to fall, or the fire to start from there. But this evidence was greatly strengthened by, and to some extent consisted of, a large amount of testimony showing the action and operation of the chimney in throwing such sparks, endangering and setting fire to property, for a long time previous, and up to the time of the fire, and how the mill had been run, and what measures had been taken or omitted by those running the mill, to avoid such danger to surrounding property, a change made in the height of the chimney, and whether, and how far, that change affected the action of the chimney by increasing or diminishing the escape of, and danger from sparks or cinders.

The evidence on the part of the plaintiff (some of which was received under objection, which will be noticed hereafter) tended to show, *first,* as to the habit of the chimney to throw sparks and the danger to surrounding property:—that from 1862 down to and after the time of this fire, sparks of fire and burning cinders · or fragments of fire were frequently and quite generally emitted from the chimney when the mill was running, and carried to con-

siderable distance (as far, and often farther than the Sherman House), falling to the ground and on buildings and sidewalks while still on fire, and sometimes setting fire to buildings and other wooden material they fell upon; that when the wind was from the southwest (especially if strong), and the mill was running, live sparks were frequently seen to fly from the chimney and fall around the Sherman House, and near to and upon other buildings, on sidewalks and the yards in and near the same direction; that in 1862 sparks from the chimney were seen to fall and set fire to sawdust near this house; that in 1863 or 1864, and again in 1869, this same Sherman House took fire on the outer south side, when the wind was in the southwest, and mill running, and sparks coming from that direction; that sparks were seen to fall on the sidewalk and set it on fire at one time; that sparks had been picked up on the platform of the Sherman House; that on one occasion clothes were set on fire when out drying on the line near the premises, and that clothes on the line drying in this neighborhood had holes burned in them, and were covered with black, dead sparks, and blackened, and that furniture set out at a cabinet shop about the same distance was rendered smutty in the same way; and that several houses near the Sherman House, and some further off, had to keep their windows shut to avoid injury of this kind to clothes, etc., inside, when the mill was running and the wind coming from the mill; that in 1873, after this fire, the Garvey House, somewhat near the mill, was set on fire under circumstances indicating that it came from such sparks; that fire had caught in several buildings similarly situated, and that all caught on the side towards the mill, and as far as known, when the mill was running, and the wind in the southwest, etc.

*Second,* As to the notice to defendant:—that men at work at the mill had knowledge of these, or most of these things; that in 1869 the engineer of the fire department of the city told persons having charge of the running of the mill, that

it was an outrage that the chimney was left in a condition
to burn the town; that the day after the Sherman House
caught fire in 1869, the plaintiff met Bartow, the defend-
ant's agent, who had charge of the mill and its running,
and Bartow recognized the danger of running the mill with
the chimney in that condition; said it was too bad, but
that the season was getting well advanced; that they had
as many logs as they could saw before it froze up, and he
did not wish to shut down to repair the chimney then, but
would do it before starting in the spring; would have it
fixed with a spark-catcher on; wished plaintiff to keep
barrels of water around, and be very careful to put out fire
if it caught, and plaintiff did so; that notice was also, at
about the same time, given to the foreman of the mill, of
the danger arising from the sparks, etc., and that plaintiff
remonstrated with him against running the mill with the
chimney in that condition.

*Third,* As to the alteration of the chimney by adding
some twelve feet to it in the spring of 1870, the plaintiff's
evidence tended to show that it made no sensible alteration,
or if any, scarcely appreciable, as to the throwing of sparks.

*Fourth,* As to the means which might have been used
by defendant to prevent the flow of sparks from the chim-
ney, plaintiff's evidence tended to show that a spark-catcher
on the top would effectually have prevented it, or greatly
lessened the danger by preventing the escape of any but
the finer sparks, which generally die out before reaching
the ground; that a hole or large vacant space behind the
boiler, and below the draft of smoke or flame coming from
the fire, has much the same effect, by causing the sparks
and burning fragments to fall out of the draft and to be
deposited there; and that a damper, with what is called a
butterfly valve, rigged with wire netting, also has some effect
to lessen the escape of, and danger from sparks; that spark-
catchers had been in use for such purposes upon locomotive
chimneys, and iron pipe smoke-stacks of steamboats, pro-
pellers, saw-mills and salt-blocks, for many years previous

to this fire, and even long before the mill was built. But, though there was some evidence of their having been used on brick chimneys of saw-mills, etc., some three or four years before this fire, much, if not most, of the evidence tended to show that they had not been thus used upon saw-mill brick chimneys in the Saginaw valley until about the time of, or after this fire. There was evidence on the part of the defendant tending to controvert the plaintiff's evidence upon many of the points thus stated, but leaving all the questions of fact involved fair questions for the jury.

The first set of errors assigned are based upon exceptions to the admission of evidence tending to show how this chimney had been in the habit of throwing sparks, and setting fire to buildings, etc., for several years previous to the burning of this hotel. The court, upon the objection of the defendant, refused to receive evidence extending back over so long a period, except upon the understanding and with the undertaking, on the part of the plaintiff, to follow it up with evidence to show that it was then in the same condition as at the time of the fire; and the plaintiff did produce a large amount of evidence tending to show this, and that the mode of using the mill, the throwing of sparks from the chimney, and the danger to other property in the vicinity, continued substantially the same, from the earliest period to which this evidence referred, down to the time of this fire, and that the raising of the chimney about twelve feet, in the spring prior to the fire, did not appreciably diminish the emission of sparks, or the danger therefrom.

Now, as the evidence of the burning of the plaintiff's property complained of, need not and did not consist of direct evidence, that in that particular instance a particular spark was seen to come from the mill, traced by the same eye through the air and seen to light upon the side of the house and set it on fire, but the plaintiff must be at liberty to show, as he did, circumstances tending to prove that the property was set on fire in this way on the

occasion alluded to, I can see no sound reason why he should not be at liberty to show any circumstances fairly tending to prove, or calculated to produce a reasonable belief, that this fire originated in this way on the occasion in question. On principle, I think all such testimony is admissible, and its force or weight to be estimated by the jury. It does not, as is here objected, raise a multitude of distinct issues, any more than in all other cases of cir-- cumstantial evidence, where the circumstances are equally numerous. And to show, as was done here, that while the mill and chimney, and the mode of using them, re- mained the same in all essential respects, the wind in the same direction, and the other surrounding circumstances the same, sparks had been seen to issue from this chimney in large quantities, watched, and seen to fall upon build- ings or sidewalks, or other wood material, and to set them on fire, and all the other facts which the evidence given tended to show, as already stated, would strongly tend to produce a reasonable belief of the particular fact of the burning being from this cause on the occasion in question. I therefore see no error in the admission of this evidence. —See *Sheldon v. Hudson River R. R. Co., 14 N. Y., 218; Field v. N. Y. Central R. R. Co., 32 N. Y. 339; Piggot v. Eastern Counties R. R. Co., 3 M. G. & S., 239; Hinds v. Barston, 25 N. Y., 544; Huyett v. Phil. & Reading R. R. Co., 23 Penn., 373.*

Upon the same principle, I think the evidence of the Garvey House taking fire, in May, 1873, (though after the burning of plaintiff's building) was admissible, together with all the circumstances tending to show that it was set on fire by sparks from this chimney. This disposes of the first five assignments of error.

The eighth assignment of error is, that the plaintiff, as witness, was allowed to be asked about his statements made to Forney, who was the foreman of the mill in 1869 and 1870, in reference to the chimney throwing sparks, and the danger from this cause to plaintiff's property. His answers

showed that his conversations with Forney, while thus fore-man, gave to Forney full notice of the danger from running the mill while the chimney was in that condition; and I think it was clearly competent for this purpose. The de-fendant, who owned and run the mill, was away in New York; and upon principle, and in justice and fairness to adjacent proprietors whose property might be injured by the mode of running the mill, notice to his foreman must be held notice to him. And though it may be true, as ar-gued by his counsel here, that his liability for damages from the cause in question did not depend upon his having this actual notice (the defendant contended on this trial that it did, and the judge yielded somewhat to this view) yet, I think it had a bearing upon the question of negligence. With actual notice of the danger from this cause, the defendant might justly be held to a somewhat stricter measure of diligence, than if ignorant of it, and to some extent this might make that negligence which other-wise would not be so.—*Teall v. Barton, 40 Barb., 137; Swift v. Applebone, 23 Mich., 252; Vaughan v. Menlove, 7 C. & P., 525.*

The sixth and seventh assignments of error are upon the admission of testimony in relation to the use of spark-catchers, and their effect in arresting the dangerous emission of sparks, on steamboat and locomotive smoke-stacks, and the iron smoke-stacks of salt-works, saw mills, etc., the plaintiff in error insisting that no evidence of this kind was admissible, except what related to the use of spark-catchers upon brick chimneys, like the one in this mill.

This question is so closely connected with, and depend-ent upon the general question of the degree of diligence required of the defendant under the circumstances, and that of his negligence in omitting to use such diligence (which are raised upon the charge given and requests asked), that it will in the main be determined in the consideration of those questions. It is only necessary to say here, that, as

the question of diligence or negligence always depends upon and partakes of the surrounding circumstances peculiar to each particular case, and that would be properly held reasonable diligence, under one set of circumstances, which would constitute culpable and gross negligence under a different set of circumstances, the fact that other saw-mill owners, or the large majority of them, having chimneys like these, did not use spark-catchers, would by no means authorize the defendant to omit the use of one upon his chimney, nor would such a fact be at all pertinent to the case, without showing that the other mills which omitted them, and the situation of surrounding property, and other circumstances, were the same, or so similar as to make the running without them equally dangerous to property in the vicinity; if in fact this actual use or omission by others would, even then, necessarily constitute the measure of defendant's duty or liability, which I think may be doubted. However this may be, I am entirely satisfied, both upon principle and the weight of authority, that, when, as in the present case (as the evidence tends to show), the mill is situated in the midst of a city, with numerous dwellings, hotels, shops, and other buildings in close proximity, and mostly of wood, and the mill chimney, without any apparatus, contrivance, or appliance for arresting the escape of sparks and fragments of burning material, generally, or even frequently, throws out such sparks and burning material to such an extent as to endanger surrounding buildings and property, and actually, on many occasions, to set them on fire, especially when the mill-owner, or his employes in charge, have notice of the danger, it becomes both his moral and his legal duty to avail himself of some such apparatus or other means, if any be known, as experience has shown to be reasonably adequate, if not the most effectual, to arrest the escape of such sparks and fire from his chimney, whether such means or apparatus had ever been previously used upon that particular kind of chimney or not, so that they

are in their nature and operation susceptible of being applied to that kind of chimney, and would operate to prevent or check the escape of such fire and sparks, if so applied. That spark-catchers, substantially of the same plan, and constructed upon the same principle as those long in use and well and publicly known, upon steamboat and locomotive smoke-stacks and upon iron smoke-stacks of mills or salt-works, would, if applied to this chimney, have afforded a substantial check to the escape of dangerous sparks, and substantially avoided the danger, and that such were their effects, and that this was so long and generally known that it was the duty of the defendant to have known it, and to have availed himself of their use,—is precisely what the evidence objected to, when considered with reference to the other evidence in the case, tended to prove; and it was, therefore, I think, clearly admissible.

In fact I think the true rule is, that the defendant, in adopting means to check the flow of sparks, and to avert the danger in question, under the circumstances of this case, was bound, not only to adopt means calculated to avert the danger, but the means which, in the progress of science and improvement, has been shown by experience to be the best; unless, indeed, it be some invention so recently made as not to be generally known, or which the defendant, by reasonable inquiry for the best means, might not fairly be supposed to have obtained knowledge of,—see *Sherman & Redfield on Negligence, pp. 5 and 6, § 7,*—or unless the expense of such particular invention should be so excessive as to render its requirement practically unreasonable, when a less expensive mode of protection, substantially guarding against the danger, might be held sufficient.

This brings us to the question, what degree of diligence the defendant was bound to use, and what would constitute negligence, which is the subject of several of the assignments of error. This question can be best disposed of by the

charge itself, so far as it relates to this subject, which is given in full in the foot note.*

* In order to recover in this case the plaintiff must establish to your satisfaction, by the evidence which has been submitted in the case, *first*, that at the time named, in August, 1870, his building, or buildings, were destroyed by fire; that at the place named and described in the pleadings in the case he was the owner of the property, is admitted; the question of fact submitted to you in that regard is, were the buildings thus owned by him destroyed as alleged; and if so destroyed, were they destroyed by the means of the fire communicated from the mill of the defendant.

It is admitted in the case, and not open to discussion, that the defendant at the time alleged was the owner and operated the mill situated as claimed, and had been for years prior to that, and has been since. The plaintiff cannot recover in this case, under any view of the evidence, unless it satisfies your judgments, that that fire which destroyed the house was communicated from the defendant's mill to the property of the plaintiff. Here is an important question of fact, and so far as the rights of the parties depend upon the questions of fact in the case, it is very important that you should most carefully consider it in reaching a conclusion.

The plaintiff alleges that this was the manner in which the property of the plaintiff was set on fire, and by the fire thus destroyed. Testimony has been introduced on the part of the plaintiff, which it is claimed tends to establish that the running of the mill, as constructed and operated by the defendant, would endanger the plaintiff's property and other property adjoining; that proper precautions were not taken by the defendant, and that for want of those precautions the buildings of the plaintiff were destroyed in this manner. If you should not be satisfied from the testimony, that the buildings were destroyed in this manner, or from this cause, it would end the case, and other questions would be of no importance for you to consider. *First*, Was the building destroyed? *Second*, Was that destruction caused by the act or negligence of the defendant, or was it caused from the fire communicated from the defendant's mill to the building which was destroyed? If it was, you should find this portion of the case for the plaintiff. Still the plaintiff is not entitled to a verdict at your hands unless you find that the fire was thus communicated to the plaintiff's buildings, and their destruction was the result of negligence on the part of the defendant, or his employés. If you find the building was destroyed by fire as alleged, and that such fire was caused by the fire passing from the mill to the building, the third point to which your attention is invited by the court, is whether the defendant thus caused the destruction of the property by or through his negligence or the negligence of his employés.

The defendant had a right to erect and operate a mill at that point. He had a right to use steam or any other motive power in it. He had a right to maintain fire in the mill for the purpose of generating steam; and if in the use of these means, without negligence on his part, either in the construction or plan of operating of his mill, the property was destroyed, the plaintiff is without remedy. If the erection and operating of this mill endangered the plaintiff's property, it was the duty of the defendant, in so erecting and so operating it, to

After a careful examination and consideration of this charge, I am compelled to say, it appears to me so clear, so correct, and entirely fair to the defendant below, that I can

use such security, such precaution, such means to lessen the danger and prevent the injury, as a prudent man, conversant with the business, understanding its operations, and the liability to endanger the loss of property adjoining, having a regard to the entire property and the surroundings, would have used; to adopt such means, such precautions, and to operate the mill in such a manner, as a prudent, cautious man would, under like circumstances and with those surroundings. He was bound to use such means (in case you find that the erection and operating the mill did endanger the plaintiff's property) to guard against that danger, to lessen that danger, and to prevent loss from these causes, that a prudent man, with a knowledge of the business and the dangers incident to it, would have used or adopted for the purpose of preventing loss arising from the dangerous cause existing.

If he fell short, either of the adoption of means to prevent such threatened danger and consequent loss, or if he operated his mill with less care, with less caution, or by the use of less means to prevent loss, and a loss accrued to the plaintiff, the defendant is liable.

Now upon this point, gentlemen, you should consider the testimony submitted on both sides, of the use that had been made of the mill, the length of time it had stood there, its operation, all the evidence which may tend to prove the manner in which it was operated, whether dangerous to the adjoining property, or not dangerous, —the evidence tending (if there is any as claimed by the plaintiff) to show that this building had been ignited time and time again, that other property had been set on fire by sparks from the mill, and the entire evidence that in any way bears upon this question, and aids you in determining whether the manner in which the mill was operated, in the condition it was, was dangerous or not.

Testimony has been introduced, and your attention has been called to it in the arguments of counsel, to show that a spark-catcher might have been useful for the prevention of sparks passing from the chimney and endangering adjoining property. Whether the defendant was bound to use a spark-catcher, depends upon the rule which I have already given you,—whether with the experience the defendant had in the use of that mill, under the management of it, and what had taken place, the manner in which it was operated, the apparent danger to adjoining property, and the real danger (if there was any) to adjoining property during the time he had operated it,— the fact whether there had been present actual danger to this adjoining property during the time he had operated it,—and whether with all the surroundings and information possessed, a prudent man, under like circumstances, with like information, would have adopted a spark-catcher or any other reasonable means to prevent danger to the adjoing property and its destruction. You must, under these rules, determine whether a spark-catcher should or should not have been used, and whether any other means were omitted, and whether their omission was negligence or not. Whether there was negligence or not, is a question of fact, under these rules,- for you to decide, not for the court.

I repeat to you, and gentlemen, the only rule I can give you in that regard is substantially the one I have already stated, that the

discover no particular in which he has any just ground to complain of it. If the court erred at all, it was in favor of defendant, by giving more importance to, and making the

defendant was required in the operating of the mill, and in its construction and use, to have used such means as a prudent man, conversant with the business, and having knowledge of the facts as they existed there, would have used under like circumstances to prevent injury. If he fell short of this, he is liable; and if loss resulted to the plaintiff, the action would be sustained to the extent of the injury.

I have already said to you, the fact (if you find it to be such) that the sparks from the mill fired the building, does not of itself show negligence. I charge you further, as bearing upon the same general subject, that if the defendant made use of fire in his business in the operating of the mill in such a way or in such a place that it endangered the property of the plaintiff, it was his duty to use such means as were known to him, or were in such general use that he might by reasonable care and inquiry have known, to prevent such fire from spreading or falling on the plaintiff's property and injuring it; and if he omitted to use such means, such omission is negligence on his part; and if such neglect caused the firing of the building, or the destruction of the building of the plaintiff, or it was through such negligence that the property was destroyed, the defendant is liable for the loss sustained by the plaintiff.

I charge you, as I already have, that the defendant's use of fire was lawful for the purpose of producing steam for the purpose of operating his mill; that he had a right, without being chargeable with neglect, to erect and operate a steam saw-mill, as such mills have been built and operated, using such precautions against the spread of fire as were generally used, and have been found sufficient to render the operation of such mills safe and harmless; but I qualify this, gentlemen, by restricting it to mills shown by the evidence in the case to be situated with such surroundings as the defendant's mill. By way of illustration, a party owning and operating such a mill, with surroundings where there was no other property that might be injured by fire communicated from the mill,—if it stood isolated upon an island, and the property of no other parties adjoined,—he would not be required to exercise any care to prevent the spread of fire on property of other parties, because there would be no danger. But where a mill is situated, as it is claimed this is, surrounded by property liable to take fire, the degree of care that is required to be exercised, is to be measured by the danger existing and surrounding the mill area. What would be a test of care and diligence and caution as to one mill, might not be the test of care and diligence to be required from the owner operating a mill in a different locality.

The care and diligence is to meet the danger and consequent loss, and the measure of diligence to be applied is the danger to be guarded against, under the rules I have given you.

I charge you further, that unless a party operating such a mill has notice that notwithstanding it is constructed and operated as other safe mills are constructed and safely operated, it is likely to endanger surrounding property, by spreading fire, the fact that it did such damage in the instance in question, is not of itself proof of negligence.

defendant's liability depend more upon, his actual notice or knowledge of the action of his chimney, and of the danger from that cause, than the case really required him to do. And the substance of the defendant's requests, so far as they were correct in principle, was, I think, embodied in the charge.

The first request (see foot-note *) was open to the objection urged by the counsel for defendant in error, that it would have confined the attention of the jury to the fact (if they should find it) of the mill having been operated for years *without having actually caused damage.* The real inquiry was whether the chimney in the mode it was used *endangered* the surrounding property. This danger might have existed all along, and the consequences been avoided by the care of property owners, or by mere accident. It would be fallacious to say that the danger never existed until the conflagration actually occurred. And as to the defendant's notice, which the request makes a condition of his liability, if the chimney as used was in fact generally dangerous to surrounding property, it was the duty of the defendant to have known the fact, under the circumstances of this case, though he might not, without notice, have known, or perhaps been bound to know, every particular instance in which fire had been thus communicated. This request is also open to the objection that it makes the use of other mill chimneys without spark-catchers, the measure or test of defendant's duty to use this precaution, without reference to the question whether the other mills were similarly situated with respect to surrounding property.

---

* *First*, The defendant's use of fire was lawful to produce steam for operating a saw-mill. If the jury find that the defendant's mill had been operated for a long period of time, embracing many years, without having caused damage by the spread of fire from the chimney, and he had no notice that in any weather it was likely to do so, and such chimneys and furnaces are in general use without any other precautions than defendant used against such spread of fire, the fact that defendant did not use precautions that have been deemed necessary and generally used on circular smoke-stacks, or chimneys of different construction, is not entitled to any weight as proof of negligence.

The modification adopted by the court to the second request (which see below *) was clearly proper for the same reason.

The third request (which see below†) is open to similar objections, but its substance, so far as not thus objectionable, was given in the charge.

The only remaining exception which requires notice is to that portion of the charge in which the court says to the jury, after fairly submitting the question of the burning of the Sherman House through defendant's negligence, "If you find as a fact that the fire passed from the building to the other property of the plaintiff upon the same lot, and immediately adjoining, without any other cause than simply the fire naturally burning and consuming the first building, you should give, in addition to the value of the first building, the value of the other buildings destroyed, situate there upon the property, with interest, the same as the other, from the time of its destruction." This charge must be understood with reference to the evidence, which showed that the woodshed of the house separated the barn from the house, that the barn was about five feet from the shed, and the wash-house about six feet from the barn, and all were of wood.

---

*\* Second,* The defendant had a right without being chargeable with negligence, to erect and operate a steam saw mill as such mills have been built and operated, using such precautions against the spread of fire as are generally used and have been found sufficient to render the operations of such mills safe and harmless; when such mills have other surroundings, and unless the party operating such mill has notice, that, notwithstanding it is constructed and operated as other safe mills are constructed and safely operated, it is likely to endanger surrounding property by spreading fire, the fact that it did such damage in the instance in question is not of itself proof of negligence.

† *Third,* If the jury find that the defendant's furnace and chimney are not unlike other furnaces and chimneys used to run saw-mills which have been operated without causing damage by fire, and also do not find that he neglected any precaution against the spread of fire, usually adopted for that purpose in other such mills, nor any other precautions that the construction or previous use of the mill indicated to be necessary, the defendant is not chargeable with negligence merely for not having used precaution that had theretofore been used on chimneys of a different kind and in different situations.

In view of the facts, the very statement of the proposition contended for by the plaintiff in error, must, upon every sound principle, be held to carry with it its own refutation. As well might it be contended that, because the fire caught in a particular spot on the *outside* of the Sherman House, which was the only direct result of the negligent use of defendant's chimney, he could not be held for the burning of the *inside* of the house, or any *portion* of the *outside* which caught only *by the spread* of the fire first kindled by the sparks.

If we are to refine upon questions of this kind, in defiance of practical common sense, the defendant's liability might just as well, upon strict scientific principles, be confined to still narrower limits. The argument is, that, though defendant may be liable for the loss of the particular building first set on fire through his negligence, and such others as are in actual contact with it, yet, his liability cannot be extended to others not in such actual contact, or where there is an intervening space, however small, between them. Now, it is so well settled as to be treated almost as an axiom in natural philosophy, that no two particles of matter actually touch each other, and that there is always an intervening space between them. The defendant's liability must, therefore, be confined to the particular particle or particles of matter which actually first caught fire, and the whole conflagration resulting, not only of the remainder of the particular board or shingle, but of the house, must be treated as a new consequential injury too remote to serve as a safe ground of damages.

This, it may be said, is unreasonable, and ludicrously absurd; and so it is; but it is slightly more absurd or ludicrous than it would be to hold that defendant's liability must be limited to the first building burned, because the others were not a part of it, or in actual contact with it, but five or six feet distant. If such other buildings are satisfactorily shown to have been actually burned by the fire of the Sherman House, caused by the negligence of the

defendant, and especially if this was, under the circumstances, the natural and probable, as well as the actual result of the fire so caused, and without any contributory negligence of the plaintiff, I can see no sound principle which can make the defendant's liability turn upon the question whether the buildings thus burned by the fire of the first, were five, six, or fifty feet, or the one-hundredth part of an inch from it.

And though a building thus burned by the fire of the first might be at such a distance that its taking fire from the first might not, *a priori*, have seemed possible, yet, if it be satisfactorily shown that it did, in fact, thus take fire, without any negligence of the owner, and without the fault of some third party, which could properly be recognized as the proximate cause, and for which he could be held liable, the principle of justice or sound logic, if there be any, is very obscure, which can exempt the party through whose negligence the first building was burned, from equal liability for the burning of the second. If it be said that this extent of liability might prove ruinous to the party through whose negligence the buildings were burned, it may be said, in reply, that, under such circumstances, it is better, and more in accordance with the relative rights of others, that *he* should be ruined by his negligence, than that he should be allowed to ruin others who are innocent of all negligence or wrong.

I see no error in the record, and the judgment should be affirmed, with costs.

The other Justices concurred.