# John P. Clark v. The Detroit Locomotive Works.

*Contracts: Steamboat engine: Suitable apparatus or contrivance: Clutch-couplings: Question of fact.* Whether, under a contract to build and set up a steamboat engine, which only requires the builder generally to provide suitable apparatus or contrivances, he is at fault for not using clutch-couplings, or any other particular device, in connection with the shaft to prevent its binding, depends on whether such device had become generally known and used, as more appropriate and efficacious than others; and this would be for the jury to determine from evidence concerning such knowledge and usage.

*Evidence: Experts: Contracts: Interpretation.* To permit an expert to be asked whether, under such a contract, containing no language on this point requiring a direct interpretation by an expert, it was the duty of the builders to put in clutch-couplings, is to allow him to give an opinion covering matter entirely beyond the functions of a witness, and is error.

*Evidence: Negligence: Question of fact: Experts: Opinions.* The course which the owner of the steamer ought, as a prudent man, to take as to laying up for examination and repairs on discovering defects in the engine which had been put into her under such a contract, may depend largely upon circumstances, and is not a question of science calling for the opinion of an expert.

*Evidence.* The government inspector's certificate is not competent evidence upon the question whether a steamboat engine is properly constructed in accordance with the terms of the manufacturer's contract.

*Evidence: Steamboat shaft: Settling by the stern: Experts.* It being claimed here that the length of the shaft settled the boat by the stern, and caused the journals to heat and bind, it was error to exclude the question, put to an expert, whether the boat settled more than it ought to, or than was usual.

*Manufacturers: Steamboat engines: Presumptions: Ordinary conditions: Usual precautions.* Builders of engines for steamers must be presumed to understand the ordinary conditions attending the running of steamers, and those which must be provided for in setting engines. If settling by the stern is common and likely, the engines and shaft must be so placed and adjusted as to receive no needless disturbance from it; and it would be negligence to disregard the usual and reasonable precautions against mischief from it.

*Submitted on briefs June 18.    Decided October 5.*

Error to Superior Court of Detroit.

*Ashley Pond,* for plaintiff in error.

*Moore & Griffin,* for defendant in error.

CLARK *v.* THE DETROIT LOCOMOTIVE WORKS.

CAMPBELL, J:

Clark, in defense to an action for part of the price of an engine which the locomotive works were to build and place in a vessel named the Gazelle belonging to him, alleged defects and consequent damages arising out of the improper construction.

William Cowie, admitted to have been a competent engineer and expert, testified to an examination of the machinery on the vessel, and to the discovery of several defects and injuries. Among other difficulties alleged, it was claimed by Clark that the journals would heat and bind, so as to interfere seriously with the running of the vessel, and questions were put to the witness concerning the proper method of preventing this, which was supposed to have been possibly caused by the length of the shaft settling it or otherwise getting it out of line. He referred to various devices, and, among others, said it was common now to use couplings called clutch-couplings, or else a universal joint in connection with the shaft. On cross-examination by counsel for the locomotive works he was asked, under objection, whether it was the duty of the company under the contract, which was shown him, to put in clutch-couplings. His answer, called out by a series of questions to the same end, was in substance that the terms of the contract did not call for them, though, for his own reputation, he would have felt bound to put them in if it had been his contract, and that as honorable men they were bound to make the engine work.

The contract is very loosely drawn, and contains no reference to any mode of construction except by comparison with another engine on the steamer Phil. Sheridan, which was shown to have had a short shaft, and not to have been subject to the same difficulty. It appeared from Mr. Cowie's testimony that the device of clutch-coupling had not been in use for the purpose in question many years, and in the

absence of any provision in the contract, the builders, while bound to provide suitable apparatus or contrivances, may or may not have been at fault for not using this particular device, according as it had or had not become generally known and used as more appropriate and efficacious than other devices. This would be for the jury to determine from evidence concerning such knowledge or usage, in accordance with the rule laid down in *Hoyt v. Jeffers, 30 Mich., 181.* The witness was required to give an opinion which covered matter entirely beyond the functions of a witness. The construction of the contract involved mixed matters of law and fact. There was nothing in its language which admitted a direct interpretation from an expert on this point, or which required verbal interpretation at all concerning the arrangement of the shaft. It could only be construed by comparison with the engine of the Phil. Sheridan, and by oral evidence as to the proper devices for overcoming the risks of a longer shaft.

This ruling was erroneous.

We think there was no error in refusing to allow a witness to be asked whether, if he owned a steamer like that in question, running in summer on a profitable route, and the engine should leak and not work well, but he did not know exactly what the matter was, he would not run it through the season and wait for navigation to close before overhauling it, rather than lay the vessel up at that time.

The course which a man ought to take when he discovers such a defect must depend upon circumstances more or less, and cannot depend upon the opinion of a witness. It is not a question of science or mechanics, and is not peculiar to shipping. Precisely similar questions might arise in the use of any implement or machinery on land or water. If an early and timely stoppage for examination and repairs would have been required in the exercise of usual prudence, and would have prevented continuous damage, then the party cannot properly recover enhanced damages which he should

have avoided. But the jury under proper instructions could determine that, and it should have been left, as it probably was, to be determined in that way.

We can see no reason why the certificate of the government inspector was allowed to be laid before the jury. It is merely given for the purpose of enabling the vessel to be allowed to run under the acts of congress. It is no evidence for any other purpose, and such facts as those in issue here could only be proved by witnesses. The inspector himself was on the stand, and the account he gave of his method of examination was not such as to indicate any necessity of giving increased weight to such certificates.

The court also ruled out a question put to an expert, whether the stern of the Gazelle, in which the engine was placed, settled more than it ought to, or than was usual. We think this was a proper question.

The builders of the engine are supposed to understand the ordinary conditions attending the running of steamers, and those which must be provided for in setting engines. Steam machinery would be useless if it was not fitted to run safely and smoothly under common conditions. If setling by the stern is common and likely, the engines and shafts must be so placed and adjusted as to receive no needless disturbance from it, and it would be negligence to disregard the usual and reasonable precautions against mischief from it.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.