## John Mouat Lumber Co. v. Wilmore.

1. **Negligence — Liability for Fire Caused by.** — The owner of a saw-mill is liable for negligently setting fire to a house, when the evidence shows that sparks constantly escaped from the smoke-stack of the mill both before and after a spark-arrester was placed on it, and that the attention of the owner had been called to the fact by plaintiff, whose house had been several times fired by the sparks.

2. **Presumptive Evidence Sufficient to Determine a Right of Action.** — Where the evidence shows that the sparks had many times before been blown into plaintiff's house, seventy-five yards from the mill, and that on the day of the fire the wind was in that direction, and that the window screen on the side of the house next the mill was loose so that the sparks might have gotten into the room where the fire originated, that there was no fire in the house at the time and no other known source from which it could have originated, the conclusion that the fire was started by sparks from the mill is warranted.

3. **Wearing Apparel — How Value Established.** — Evidence of the cost of wearing apparel destroyed by fire, followed by evidence of wear and tear, is competent to fix its value, such goods having, when worn, no market value.

*Appeal from Jefferson County Court.*

Messrs. Wm. B. Mills and Wm. E. White, for appellant.

Messrs. Coe & Freeman, for appellee.

Action by appellee, J. H. Wilmore, against appellant, the John Mouat Lumber Company, for negligently setting fire to appellant's house, by reason whereof, it is claimed, it and its contents were partially destroyed by fire upon the 22d day of May, 1886. The cause was commenced in a justice's court, consequently there are no written pleadings. The trial before the justice having resulted in a verdict for the plaintiff, the defendant company appealed to the county court. In the latter court the cause was, by consent, tried to the court without a jury. As the result of this trial appellee recovered judgment for $300 and costs. To reverse this judgment the case is brought here by appeal.

MR. JUSTICE HAYT delivered the opinion of the court.

The principal question presented upon this appeal is in reference to the sufficiency of the evidence to support the judgment. Counsel for appellant, in his written argument, says "that there was no evidence of negligence on the part of the defendant, nor was there any evidence that the fire originated from the defendant's fire, smoke-stack, or mill." The evidence received at the trial was not taken down by a stenographer, and the abstract upon which we must determine the appeal is not as full as it should have been.

It is admitted that appellant was the owner and proprietor of the saw-mill from whence it is claimed the fire originated. It is also conceded that the house of appellee was situate about seventy-five yards east from the mill, and that there was a window in the bedroom where the fire is shown to have originated, and that this window was on the side nearest the mill; also, that the wind at the time was blowing from the direction of the mill towards the house. Appellee, testifying in his own behalf, said, in answer to the question, "Had you been troubled by fires from this mill before this, while it was occupied by the defendant?" "Answer. I had. Q. When was it? A. It was when the wind blew; had noticed a thousand of them. It bothered me all the time, but chiefly after January. I had called the attention of John Mouat, A. T. Mouat, and Mr. Eiler, and most all of them, to the smoke-stack, as my wood was on fire, and my hay and charcoal. Mr. Eiler is secretary of the company, and John Mouat is the president." In answer to other interrogatories the witness said: "I saw the fire catch previously from the mill. * * * I have seen fires in the front room from the smoke-stack. * * * I saw some sparks after the fire, but not any before that day. They were about the same thing as I had seen before. I was familiar with the smoke-stack. I examined it after the fire. It was thirty feet high. It was a hood, funnel-shaped,

on top of it, set on bars of iron. The hood is on the top part of it, and the space was open between the lower part and the smoke-stack."

In answer to the question, "How much time did it take to fight the fires?" the witness answered: "It took a good deal of time. I cannot say how much. A good many times I got up and went out for fear, and I watched always in the day-time. I have had to leave my work and put out large fires that would take from ten to twenty buckets of water, and I have been kept at home. This occurred many times. I cannot tell the time, for it was on and off for three and four months. It was not only the loss of time, but I would have to leave my work. I can only guess at the time. It may have been two or three weeks that I put in in that way. It must have been two or three, positively two weeks."

Mrs. C. A. Northrup testified upon this point: "Question. Have you ever seen sparks from the mill flying there? Answer. Yes; it was the Tuesday after the fire occurred. That was the only time. It came in there from the northwest. I cannot tell the kind of a spark. It blew across my lap. It was a live spark, and it came from the northwest. I saw a fire that came from the way the fire was. I have seen sparks come from the mill, because they came with the smoke of the mill."

Mrs. Mary Wilmore testified in answer to the question, "Have you seen sparks of the fire from this mill before the fire of your house?" "Answer. I did, repeatedly; have seen fire from the mill before the fire in our house. There was hardly a day but we had fires to put out. Q. Had you seen sparks at night from the mill more than once before that? A. Yes, sir; a thousand times. I have been burned with them. Q. Have you seen them since this spark-arrester has been put up the same as before? A. I have; have seen coals and sparks both come, some as large as the end of my thumb. A window in the west room was raised up, and

the screen was torn at the top and at the bottom.  I saw some dead cinders in the west room.  They looked like dead bark."

The witness Daniel Northrup testified in answer to the question, " Did you ever: notice sparks before or after that time?"  " Answer. I have.  I have seen fires around Wilmore's from the cinders.  I saw as many as twenty or thirty.  The most of them were in his wood-pile."

The witness Charles Nadler testified to the same effect.

The witness Henry Hildebrand testified, in reference to the spark-arrester upon the defendant's smoke-stack, " that it was not safe, for the reason that the rim had a hole twenty-four inches, while the smoke-stack was only twenty inches, so it left two inches in the hole."

Here we have testimony showing that this smoke-stack was constantly emitting sparks both before and after the spark-arrester was put on, and also testimony to the effect that the spark-arrester was not sufficient, and did not answer the purposes for which it was intended.  We cannot find from this record that it was denied by any witness that sparks did thus escape, and although it was testified by defendant's witnesses that the spark-arrester was a good one, and one of the best that were made, still, it was for the court below to decide upon the weight of the evidence.  Its decision was against appellant; and we think there was sufficient proof of negligence to support this finding of the trial court.

It is claimed that the evidence does not show that the fire caught from the mill.  In support of this claim counsel contends that the fire caught inside the house, and that it could not, therefore, have been started by sparks from the mill.  In answer to this, it may be said that if it be conceded that the fire originated within the bedroom, the evidence shows that it may have been blown in through the open window, although the witness Gallin testified that there was a screen on the outside of the window, and that it

was not loose, so far as he could see. The testimony of this witness was so shaken on cross-examination that the trial court may have attached very little weight to it. Other witnesses testified that the screen was loose at the top and bottom, so that cinders and sparks from the mill could and did pass into the room; and that fires had previously caught in this manner from the mill.

Although "no eye-witness saw the sparks" that started the conflagration, it is in evidence that sparks and burning coals were frequently emitted from the mill and that they were so emitted on the day of the fire; that the wind was blowing so as to carry the sparks in the direction of the house, and that fires in and about the house had frequently been started in this manner; that there was no fire in the house at the time, and no other known source from which the fire could have originated. From the very nature of the case, resort to presumptive evidence became necessary. The most important rights of property and the gravest criminal charges are being constantly determined upon such evidence, and we see no reason why this case should be made an exception. In our opinion, the facts and circumstances detailed by the witnesses upon the stand justified the conclusion reached by the trial court that the fire causing the damage was started by sparks from the mill. *Kaine v. Weigley*, 22 Pa. St. 183; *Railway Co. v. De Bush*, 12 Colo. 294.

But one other question was raised at the trial by such specific objections as to entitle it to be reviewed upon appeal. Against appellant's objections, appellee and his wife were both permitted to give evidence of the cost of certain wearing apparel and family clothing. As the testimony was followed by evidence of wear and tear, it was proper for the consideration of the court. There is no market value for such goods when worn; hence, the general rule in reference to the measure of damages does not control. In such case the value may be fixed by considerations of cost

and actual worth at the time of the loss without reference to what they could be sold for in a particular market. *Railroad Co. v. Frame*, 6 Colo. 382.

Finding no substantial error in the record, the judgment must be affirmed.

*Affirmed.*