THE PUEBLO LIGHT, HEAT AND POWER COMPANY v. McGINLEY ET AL.

NEGLIGENCE—BURDEN OF PROOF.

It is incumbent upon the plaintiffs, in an action for damages by fire caused by the operation of the defendant's works, to prove affirmatively that the fire was set out by sparks from the defendant's chimney, and that it resulted either from a failure to use proper appliances about the chimney to protect adjacent property, or that there was a negligent user of what the defendant employed for the purpose. The burden rests on the plaintiffs to show not only that

the fire might have proceeded from the defendant's use of his property, but he must make it fairly certain by affirmative evidence that it did so originate. To charge the defendant with negligence and consequent responsibility for his user of his own property, it must appear that the user was dangerous, and that it was within his power by reasonable means to prevent injury to adjacent property of others.

*Appeal from the District Court of Pueblo County.*

Mr. A. M. NICHOLAS and Messrs. WALDRON & DEVINE, for appellant.

Mr. JOHN A. COLLINS and Mr. JAMES A. PARK, for appellees.

BISSELL, P. J., delivered the opinion of the court.

A barn which was jointly occupied and owned by Nyberg and the McGinley Brothers with its contents was destroyed by fire in the early part of 1892. Nyberg and the McGinley Bros. brought suit against The Pueblo Light, Heat and Power Company to recover the value of the property destroyed. The two suits were consolidated and tried together and the plaintiffs had judgment for $132.50 and $212 respectively, from which the company appealed. To get judgment, the plaintiffs of necessity must have successfully maintained several propositions. It was incumbent upon them to prove affirmatively that the fire was set out by sparks from the defendant's chimney, and that it resulted either from a failure to use proper appliances about the chimney to protect the adjacent property, or that there was some negligent user of what the defendant employed for the purpose.

At the outset we concede that, while the case involves very little money, it has caused the court a great deal of trouble. In our desire to do the plaintiffs exact justice and infringe no settled principle of law, we have read the testimony with very great care and have given it very unusual consideration. As a result of this very attentive scrutiny,

we are forced to the conclusion that the plaintiffs were not entitled to recover on the case as they made it. The plaintiffs proved that their property was situate near the power house of the company, which was on Third street between Court street and Grand avenue, in the city of Pueblo. The locality seems to have been pretty well built up, and immediately about the power house, or in the same block with it, there were a good many wooden structures and some tents with lumber sides, and evidently considerable loose and combustible material scattered about the ground. The stable was originally on a site which was afterwards occupied by a brick building erected by Nyberg, but was moved back on the lot quite close to this new structure. The lower part of the building was occupied as a commission house by the McGinley Bros. and the upstairs as a lodging house, while the stable was used both by Nyberg and the McGinleys for the customary purposes. Nyberg kept a cow and a horse in his part, and the McGinleys kept a horse and the usual horse and stable furniture on their side. The stable took fire about midnight on the night of the 4th and 5th of January, 1892, and very little of its contents was saved. The loss was shown to have been amply sufficient to support the judgment. Both the stable and the power house had been there some years, although the stable had not occupied its present situs but about a year before the fire. The power house had two chimneys. One stack was about fifty feet high from the ground and the other about seventy. The chimneys were put to the usual purpose to furnish a draft under the boilers and discharged the smoke in the customary fashion. The Power Company used no artificial draft, relying upon the height of the stacks to furnish what was necessary to make steam and power. It was conceded there were no spark arresters on these chimneys. The proof tended to show that sometimes, for the purposes of cleaning the chimneys, the company would force steam into them and drive out the soot which always accumulates when soft coal is burned. The engineer testified that this was not done on the night

of the fire, and that it was never done while the works were
running. It was in evidence that at times sparks would be
seen coming from the top of the chimneys and falling towards
the ground. This circumstance furnishes one matter of con-
tention between the parties. There is no evidence that
these sparks ever set fire to anything, except what was given
by Nyberg, who testified generally that he quite frequently
saw sparks coming out of the chimney which would fall and
cover the yard, and apparently he intended to testify that on
at least one occasion sparks set fire to leaves and some other
light combustible material. This happened before the stable
was moved to its present locality. Nyberg undoubtedly
testified as did one or two other witnesses for him, that it
was of frequent occurrence for sparks to be seen coming from
the chimneys and falling around about the premises, cover-
ing the clothes which were hung out with soot and other-
wise giving evidence that they were reaching the ground;
but no witnesses other than Nyberg testified that these sparks
ever set fire to anything, and his testimony on that subject
is exceedingly indefinite and unsatisfactory. Nyberg did
not testify positively and directly of his observation and
knowledge that sparks which came from the chimneys did
set fire to anything, although his evidence would permit this
possible construction. It is this uncertainty in his testimony,
coupled with the proof which he himself made concerning
the constant and continuous emission of sparks, which gives
great support to the appellant's contention that the sparks
which came out of the chimney were nothing but luminous
soot, and not of sufficient substance to set fire to anything.
The company's position is likewise very largely supported
by the circumstance that this had been going on for some
years in that locality and had resulted in no damage to any
property. Nobody saw the fire originate. When Nyberg
first reached it the flame was bursting out of the center of
the stable, and the structure was evidently all on fire and
raging so fiercely that he was unable to get his stock out of
it. It is true Nyberg testifies the sparks were falling all

around the building, and would attempt to give the impression these were sparks coming from the power house; but he does not testify so directly, and it is very evident what he saw were sparks and cinders falling from the fire itself. The only person who saw the fire about the time it started was the fireman of the company. He saw a light springing up about the stable and found it to be on fire, and was directed to get out the hose and put it out. The hose was not long enough and he did not succeed. The fireman testifies the fire had started on the side of the structure farthest from the power house, and in the most improbable place for it to originate if it were set out by sparks from the company's chimney. It is not necessary to further state the testimony on the subject, for this indicates very clearly the court's conclusion respecting it. It has already been stated there were no spark arresters on the chimney, and the plaintiffs offered no evidence concerning either their expediency or necessity in cases of this kind. The company's engineer testified they were not in use on any chimneys in the city so far as he knew, and without an artificial draft they were impracticable, and their necessity had never been discovered in local plants of this description.

The imperative rule which is almost universally followed in the appellate courts of this state is in our opinion in no wise infringed by the reversal of this judgment on the grounds we assign for it. Questions of fact, which have been determined on conflicting testimony by either courts or juries, are accepted as settled, and the conclusions are almost uniformly taken as the basis of the opinion. To us the present case lies very clearly outside the binding force or in fact the possible operation of this well established practice. There is no evidence pro or con on the question of the origin of the fire. The record is equally barren of testimony which affirmatively establishes its cause. The whole case rests, so far as regards this proposition, on the presumption which follows the proof which the plaintiff made concerning the falling of the sparks, and the danger occasioned thereby to adjacent property.

There was no proof offered that the sparks ever set fire to anything, except the evidence which Nyberg himself gave, from which it might possibly be concluded that on one occasion some leaves and other light material were found on fire, having been probably started by the sparks from the chimney, but even this is not clear. Nyberg himself does not testify that he saw the sparks fall on the leaves and the fire immediately follow, nor is there any testimony in this direction. The case virtually stands in simply this situation: The property was adjacent; sparks did occasionally come from the chimney, falling down, some say, to the ground, and others not. They were never seen to set fire to anything, unless it may be conceded they did at the time Nyberg testifies he saw the leaves on fire. The case is without proof which tends to show how, or in what way, or in what form the fire started. This shows the difficulty of the present inquiry. The burden rests on the plaintiffs to show affirmatively not only that the fire might have proceeded from the defendant's use of its property, but they must make it fairly certain by reasonable affirmative evidence that it did so originate. Shearman & Redfield on Neg., vol. 2, sec. 675 (4th ed.); Cooley on Torts, 702 (2d ed.); *Denver, etc., R. R. Co. v. De Graff*, 2 Colo. App. 42; *Phila. & Reading R. R. Co. v. Yerger*, 73 Pa. St. 121; *Reading & Columbus R. R. Co. v. Latshaw*, 93 Pa. St. 449.

The plaintiffs entirely failed to bring their case within the scope of this well settled law. When they established the fact that sparks were constantly coming from the chimney and falling about the grounds, and did not show with equal clearness they ever set fire to anything, they failed to prove what was absolutely necessary to raise the presumption that the fire which burned the structure was set out through the company's negligence in the use of its works. The case does not come anywhere near the one cited by the appellees' counsel, and decided by the supreme court in 15 Colo. 136 (*Mouat Lumber Co. v. Wilmore*). In that case there was proof which tended to show a constant breaking out of fires directly communicated by sparks from the mill chimney to

the premises and material in the yard occupied by Wilmore. Even in this case there was very great doubt whether the proof was sufficient to warrant the presumption that the fire complained of was communicated by the Lumber Company's mill. The court below so held, however, and there was enough in the record to justify the supreme court in accepting the conclusion. It is clearly impossible to so hold in this case. What a future trial may show cannot be foreseen, and in this respect the plaintiffs may supply what is needed to warrant the court in indulging in the presumption.

There is a further defect in the plaintiffs' proof which would call for quite an extended discussion of the law, if the controversy had not already been settled by the argument on the first proposition. This defect comes from the failure to establish that the use of chimneys of this height in such a locality, without spark arresters, was negligence, when no artificial draft was used to stimulate the fire. There is a case in the 30 of Michigan on which the appellees rely (*Hoyt v. Jeffers*, 30 Mich. 181), which furnishes some support to their contention that it was the duty of the Power Company to use arresters on their chimneys. In trying their case, however, counsel failed to make the proof which would bring the action within the scope of the decision. He neither showed that such things were usual in the vicinity, nor did he prove enough concerning the surroundings and the situation of the power house and buildings in the locality nor about the fuel which was used and the emission of dangerous sparks which set fire to combustible material, to warrant the inference that the use of these chimneys without arresters was necessarily dangerous to the adjacent property. Of course, it is always true a man has a right to use his property as he will, having due regard to the safety of his neighbors. To charge him with negligence and a consequent responsibility for his user, it must appear the user was dangerous, and that it was within his power by the use of reasonable means to prevent injury to his neighbors. It is quite possible the case may change in this particular on a subsequent trial, and we therefore

refrain from any other than this most general expression respecting the law controlling this liability. The facts are not sufficiently well settled to enable us to either accurately declare the rule or to warrant us in stating what it is in these matters.

For the reasons expressed, the judgment of the court below will be reversed, and the case remanded.

*Reversed.*