## John O'Callaghan v. Wilhelm Boeing.

*Commissions on sale of real estate—Evidence—Charge to jury—Argument of counsel.*

1. Where there is testimony tending to support the theory upon which a party has tried his case, it is error to refuse to instruct the jury upon such theory, unless the instruction asked for is covered by the general charge.

2. Where counsel bases an argument to the jury upon a state of facts unsupported by the testimony, it is error to refuse to instruct the jury that no such facts have been proved, when requested by the opposing counsel at the close of such argument.

3. Where a defendant, sued for commissions claimed by plaintiff as due him on a sale of land, defends on the theory that he has paid the agreed commissions to another real-estate agent, by direction of the plaintiff, and that the two were to make a division of the same, and the second agent testifies that he received the money under such an arrangement, which he has not carried out, he may be asked on cross-examination why he has not paid plaintiff his share of the money.

Error to Wayne. (Gartner, J.) Submitted on briefs October 12, 1888. Decided November 28, 1888.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*J. T. Keena,* for appellant.

*Dickinson, Thurber & Stevenson,* for plaintiff.

[The positions of counsel are fully stated in the opinion.—REPORTER.]

LONG, J. This cause was tried in the circuit court for Wayne county, before a jury. Plaintiff had judgment for $2,617.50. Defendant brings the case to this Court by writ of error.

The undisputed facts appearing upon the trial were that defendant, residing at the city of Detroit, a pine-land dealer, owning a quantity of pine land in Minnesota, in May, 1885, placed the same in the hands of Ziba B. Graham, engaged in buying and selling such lands on commission, for sale at the price of $35,000. The understanding was that, if Graham made the sale at this price, he should receive a commission of 5 per cent.

Plaintiff resided at Norway, Mich., and is engaged in the same business as Graham. Graham and plaintiff opened correspondence with each other, with a view of disposing of these Minnesota lands. Plaintiff, representing that he had a purchaser for the lands, entered into an agreement with Graham to divide the commission. After considerable correspondence between plaintiff and Graham, principally designed to have Graham arrange with defendant so that the most money could be made for mutual profit, plaintiff came to Detroit, bringing his purchaser with him, and was there introduced to defendant by Graham. At this time a new agreement was entered into, by which defendant was to deed the lands for the consideration price of $33,000, and when said amount was received from the purchaser $3,000 thereof was to be paid by defendant as commissions; the actual consideration to defendant being $30,000. The sale was made, money collected, and the defendant paid the $3,000 commissions over to Graham, who retained the whole of it, not paying any part of it over to plaintiff, for some

reason, which Graham was not permitted to disclose on the trial.

The disputed fact is, to whom was the commission to be paid by defendant, under the agreement?—plaintiff claiming that defendant agreed to send him $2,250 of the amount, and pay $750 to Graham; defendant claiming that he agreed to pay the commission to Graham, who had the lands in his hands for sale, and the division thereof was a matter between plaintiff and Graham, in which he had no concern. It also appears that, after the price and manner of dealing was agreed upon, O'Callaghan and Graham disputed between themselves about the division of the $3,000, and finally agreed on the basis of $2,250 for O'Callaghan and $750 for Graham.

Mr. Graham testified upon the trial that the $3,000 was to be paid by defendant to him; that it was so paid a short time after it was received by the defendant but he had paid no part of it over to plaintiff. Witness was then asked by defendant's counsel:

"After the $3,000 was paid to you, how did it come about that you did not pay Mr. O'Callaghan?"

This was objected to as immaterial, and excluded by the court. The witness Graham further testified:

"I had not seen Mr. Donovan [the purchaser] before he came to Detroit. O'Callaghan represented the buyer, and I the seller. I claimed one-half the commissions. That was the understanding O'Callaghan and I had. On the day we consummated the sale, I induced Boeing to take less than $35,000. I did not own the land. I was trying to get a good price for it, and I brought O'Callaghan and Boeing together. I was authorized by Mr. Boeing to sell the land at $35,000, and I expected to get my pay out of the 5 per cent. on the $35,000. I did not expect to get anything out of the purchaser; I wanted O'Callaghan to do that. I knew this $3,000 was paid by the purchaser. I did not expect that Mr. Boeing in this trade would pay the 5 per cent. Our agreement was that I should get my commissions out of the $3,000."

The defendant also testified that—

"Mr. Graham or any one else was not to receive a commission out of the $30,000. I did not agree to pay any commission on that price."

On making the closing address to the jury, counsel for plaintiff argued:

"That the payment of the $3,000 commission by Boeing to Graham was an attempt on their part to relieve Boeing of the payment to Graham of the commission of 5 per cent. on the selling price of the land, and that the attempt now to claim that the understanding between Boeing and Graham was that he (Graham) was not to have a commission on this sale, making it an exception to the general arrangement existing with reference to the payment by Boeing to Graham of a commission of 5 per cent. on any lands he should sell for Boeing, was negatived by the agreement that O'Callaghan was to have $2,250 of this $3,000 commission, and Graham only $750. He evidently, in assenting to this arrangement as to the division of the $3,000, relied upon his 5 per cent. commission from Boeing on the $30,000; and $1,500, with the $750 he was to get out of the $3,000 coming from the purchaser, would make his share $2,250, and O'Callaghan's $2,250."

Counsel further argued that—

"Graham received the $3,000 from Boeing as Boeing's agent, to send $2,250 of it to O'Callaghan, and Graham under such circumstances kept the $2,250 that Boeing had intrusted him with as his agent. Graham committed a criminal act in keeping it, and is liable to prosecution therefor."

At the close of the testimony the defendant's counsel requested the court to charge the jury as follows:

"1. That if the jury find that the agreement was that Boeing could pay the $3,000 commission to Graham, to be divided between O'Callaghan and Graham, the verdict should be for defendant.

"2. If the jury find that Mr. Boeing agreed to pay the $3,000 to Mr. Graham, their verdict must be for the defendant.

" 3. That if the jury find that the agreement was that Boeing should pay the commission to Graham, under the facts in this case O'Callaghan has a right of action against Graham, and not against Boeing.

" 4. The plaintiff is not entitled to recover unless the jury find Boeing expressly agreed to pay the $3,000, or $2,250 to O'Callaghan.

" 5. The burden of proof in this case is upon the plaintiff to show such contract.

" 6. That under the agreement, as testified to by Mr. Boeing, he was bound to pay the $3,000 to Mr. Graham.

" 7. There is no evidence in this case that Mr. Boeing paid this $3,000 to Mr. Graham as his (Boeing's) agent, to send $2,250 to O'Callaghan.

" 8. The undisputed evidence is that the only commission to be paid by Boeing to either Graham or O'Callaghan was the $3,000."

These requests the court refused to give in his charge to the jury, and upon such refusal error is assigned. We think the first five requests to charge were all substantially covered by the general charge, and need not be discussed.

We think the court was in error in refusing the sixth request to charge. The request was, in substance, that if the jury found as claimed by the defendant, that it was agreed that he should pay this commission of $3,000 over to Graham, then he had fully performed the agreement upon his part in making such payment to Graham. This was the theory of the defendant from the outset of the trial, and the only defense sought to be made to the action. It was denied by the plaintiff, he claiming the arrangement to be that . the defendant was to send the $2,250, when received from Donovan, directly to him. If, however, the arrangement was as testified to by the defendant, then he was justified in paying it to Graham, and the plaintiff, having authorized such disposition of the money, could not maintain the action against defendant after such payment was made.

72 MICH—43.

The most serious error, however, was in the refusal of the court to give the seventh and eighth requests to charge. These requests were presented at the conclusion of the argument of counsel for plaintiff, and, in view of the remarks made and the position taken by plaintiff's counsel, the court should have given these requests. There was no warrant for the assumption by counsel that Graham was·to have an additional 5 per cent. commission from Boeing. Both defendant and Graham had positively denied this upon the trial, and no evidence was given to contradict them, and Graham had fully explained why he had consented to take the $750, and allow O'Callaghan the $2,250 of the commission. It was upon the representation of O'Callaghan himself that he had two others to divide commissions with, and, as Graham testified, he supposed it was allowing to each of the four $750, and apparently, rather than have the trade fall through, he assented to the arrangement, and agreed that O'Callaghan should have the $2,250 for the purpose of closing it. Graham's testimony became very important in the case. Plaintiff's claim and theory was that when the commissions were collected from the purchaser the defendant was to pay him his agreed part directly, and, not having paid it, he had a right of recovery. The defendant, on the other hand, claimed that the agreement and understanding was that when the money came to him from Donovan he was to pay the whole $3,000 over to Graham, and that in pursuance of such agreement he had so paid it. If this claim made by defendant was substantiated, then the plaintiff had no right to recover, and the court substantially so instructed the jury. Plaintiff and defendant are directly opposed to each other in their testimony upon this proposition.

Mr. Graham is called as a witness, and gives his ver-

sion of the agreement, and supports fully the testimony of the defendant. It became a question of fact for the jury, as to which side of the controversy was right. Plaintiff's counsel, to destroy the effect of the testimony of Mr. Graham, in his argument to the jury makes the claim, or advances a new theory in the case, not supported, but entirely contradicted, by the evidence in the case, that Graham—

"Evidently, in assenting to this arrangement as to the division of the $3,000, relied upon his 5 per cent. commission from Boeing."

But counsel does not stop there. He asserts that in the defendant paying the $3,000 over to Graham he made him his agent to send O'Callaghan the $2,250, and that Graham, in keeping it, committed a criminal act, and is liable to a prosecution. There is no testimony in the case to warrant this assumption. The plaintiff's claim was that the money was to be sent to him. The defendant's claim was that he was authorized by the plaintiff to pay the whole to Graham, and in this he is supported by Graham. What the reason was for Mr. Graham's withholding the money from plaintiff does not appear. The defendant sought to make it appear, but the counsel for plaintiff made objection, and the court excluded it. We think it was important, under the defendant's theory, to show why the money had not reached the plaintiff, after having been paid to Graham. If, as defendant claims, he was directed by the plaintiff to pay to Graham, then Graham became plaintiff's agent to receive and transmit the money to him; and, Graham having received it, the defendant had discharged his full duty to plaintiff, and could not be compelled to pay again.

The agent of plaintiff, under this theory of the case, was being examined, and, having admitted the payment to him of the money, was asked why he did not pay it

over. The principal says that "it is immaterial. I have a right of recovery against the defendant upon another theory." The answer to this inquiry may or may not have shown some arrangement between plaintiff and Graham in reference to this money, by which Graham was to apply his share in another way for his benefit; and if any arrangement had been shown between the plaintiff and Graham making a disposition of the money for plaintiff's benefit, he would be considered as adopting or consenting to the payment to Graham. This testimony was competent, and the court was in error in excluding it, as well as in refusing to charge the jury as requested by defendant in his seventh and eighth requests to charge.

For the errors pointed out the judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.