## THE PEOPLE v. NEWELL B. PARSONS.

105 177
148 °656

*Criminal law—Jury—Qualifications— Larceny—Evidence— Confessions—Instructions to jury—Presumption of innocence.*

1. A juror in a criminal case testified on his *voir dire* that he should hesitate slightly about convicting a person on circumstantial evidence; that he would like, before a respondent should be sent up, to hear positive proof against him, and that he would hate to find a man guilty on circumstantial evidence; that if the evidence was so conclusive and satisfactory to his mind, weighing it as he would any evidence that affected his own interests in doing business, as to preclude any other rational theory, he would convict, but that he was somewhat prejudiced against circumstantial evidence where it deprived a man of his liberty, and so far as it related to criminals. After a challenge for cause interposed by the people had been sustained, other jurors were for various reasons excused by the prosecuting attorney and by the respondent's counsel, after which both announced themselves as satisfied with the jury. And it is held that the respondent was not prejudiced by the action of the court.

2. In a prosecution for the larceny of certain railroad bonds, which the respondent, as the people's evidence tended to show, had expressed to a friend in another city, with the instructions, by mail, to deposit the bonds in a safety-deposit vault, the friend testified that the package containing the bonds was received during his absence from the store where he was employed; that, upon his return, the parcel boy notified him of the receipt of the package, and witness told him to open it; that, upon the attention of the witness being called by the cashier to a letter which had been received for him, he recognized the handwriting, read the letter, and then told the boy not to open the package, but took it, and left the store. The testimony of the cashier and the parcel boy as to what occurred at that time agreed substantially with that of the witness. And it is held that the testimony of the cashier and the boy related to what occurred on the receipt of the package, rather than to the conversation then

105 MICH.— 12.

had, and bore upon the character of the letter received by the first mentioned witness, and was admissible.

3. Statements made to a police officer, while the respondent was in jail, are admissible as evidence against him where it appears that he volunteered the talk; that it was suggested to him by the officer that he should do his talking with the attorney for his employers, whose property he was charged with having stolen, and that he was under no obligation to talk with the witness; and that the only suggestion that savored of possible advantage to the respondent was that he might, by talking with the attorney, avoid trouble and notoriety.

4. In a prosecution for the larceny by a book-keeper of certain railroad bonds belonging to his employers, the people were permitted to show that on a certain morning, two days after the time the theft was alleged to have been committed, the attention of the employers was called by the respondent to the condition of the vault in which the bonds had been kept; that upon examination they found that the combination lock had been removed from the outer door of the vault, that certain books and vouchers which were in the vault on the day before had been taken, and that the bonds were gone. And it is held that the testimony was properly admitted.

5. Where the jury in a criminal case have been instructed that they must be satisfied, beyond all reasonable doubt, that the respondent has committed the offense with which he is charged, he is not prejudiced by an omission to charge them that the respondent is presumed to be innocent; the court having already stated, in the presence of the jury, that in a criminal prosecution nothing can be presumed against the respondent.

6. Where, in a prosecution for the larceny of certain railroad bonds, there is no contest as to their ownership, and no claim is made that they were taken by authority, it is sufficient for the people to prove that the bonds were taken from the vault where they were kept, without the consent of the surviving member of the firm to which they belonged, or of an executor of one of the deceased partners, who had actual charge of the bonds, it appearing that the other executor, as also a co-executor with the survivor of the third partner, had nothing to do with the management of the partnership business.

7. The court instructed the jury that it was necessary for the people to prove, beyond a reasonable doubt, at least the *de*

*facto* existence of the railroad company, and that the fact, if found by the jury, that said company completed its road several years before the bonds were issued, and equipped it with rolling stock, and had during that time actually been doing business as a railroad company, was sufficient to establish the *de facto* existence of the company. And it is held that the respondent was not prejudiced by said instructions.

8. It is not the rule that a respondent is entitled to have requests to charge given in the very language in which they are framed, subject to the sole proviso that they state the law correctly and that there is evidence to support them.

9. A party is entitled to have specific charges upon the law applicable to each of the various hypotheses or combinations of facts which the jury, from the evidence, might legitimately find, *and which have not been covered by other instructions;* and, where language seemingly inconsistent with this qualification has been used in former decisions, it must be held applicable only to the circumstances of the particular case.

Error to Saginaw. (Wilber, J.) Argued March 1, 1895. Decided April 30, 1895.

Respondent was convicted of the crime of larceny, and sentenced to imprisonment in the State prison at Jackson for 5 years. Judgment affirmed. The facts are stated in the opinion.

*D. P. Foote* and *Trask & Smith,* for respondent.
*Fred A. Maynard,* Attorney General, and *E. A. Snow,* Ex-Prosecuting Attorney, for the people.

McGRATH, C. J. Respondent was convicted of the theft on the 4th of April, 1894, from a vault in the office of Wells, Stone & Co., at Saginaw, of 463 bonds, of the value of $1,000 each, issued by the Cincinnati, Saginaw & Mackinaw Railroad Company. A. W. Wright, F. C. Stone, and C. W. Wells had composed the copartnership of Wells, Stone & Co. Stone and Wells had died. A. W. Wright, of Alma, and B. E. Wells, of Duluth, were Wells' executors, and A. W. Wright and E. P. Stone and

Harriott F. Stone were Stone's executors. The business was being continued by Wright on behalf of all, Edwin P. Stone having charge thereof. Wright, the estate of Wells, and the estate of Stone owned the bonds. Respondent was at the time, and had been for a number of years, the trusted bookkeeper of the firm. He had assisted in clipping the January coupons from the bonds, and knew that the bonds were kept in a tin box in the vault. He had the combination, a key to the inner door of the vault, and a key to the tin box. On the morning of the 6th of April the attention of the proprietors was called by Parsons to the condition of the vault; to the fact that the combination lock had been removed from the outer door of the vault, and that certain books and vouchers which were in the vault on the day before had been taken. It was at this time that the loss of the bonds was discovered. The people's evidence tended to show that the bonds had been sent by Parsons, by express, to one Knight, at Grand Rapids, with instructions, by mail, to "deposit them in two safety-deposit vaults, where they cannot be found, and wire me;" that Knight received the bonds, placed them in one safety-deposit vault, and, after the arrest of Parsons, exposed the whole matter, when the bonds were recovered. The defense was that Knight and Parsons had been very intimate; that Knight had frequently visited Parsons, at Saginaw, and, upon such visits, Knight stopped with Parsons, at the latter's home; that, in the latter part of February, Knight spent two or more days at Saginaw, and, on the night before his departure, brought a package to Parson's house, and on the next morning, representing that he had too much to carry, left the package with Parson's, to be forwarded to him when requested; that, on the 3d of April, Parsons received a letter from Knight requesting him to forward the package to him by express; and that, on the 4th of April, Parsons forwarded the package, innocent of its contents. Knight claimed that he had destroyed the letter he received with the package, agreeably to the

instructions contained therein, and Parsons claimed that
he had lost the letter sent him by Knight, requesting
him to forward the package.

A juror was challenged by the prosecuting attorney,
and excused by the court. The record discloses the
examination of the juror, the challenge, and the fact
that he was excused, but contains nothing tending to
show that respondent was prejudiced thereby.[1]

Knight testified that he was at the time in the employ
of Houseman, Donnelly & Jones; that the package was
received in his absence; that when he came in the parcel
boy held up the package, and notified him of its receipt;
that he then told the boy to open it; that his attention
was then called by the cashier to a letter which had
been received for him; that he recognized the handwrit-
ing upon the letter, opened it, and read it hurriedly, and
then told the boy not to open the package, but took it,
and left the office. The cashier and the bundle boy were
called, and testified to what had occurred upon the receipt
of the package, agreeing substantially with Knight.
Error is assigned upon the admission of this testimony,
but the testimony related to what occurred on the receipt
of the package, rather than to the conversation. It bore
upon the character of the letter which Knight had
received.

Error is assigned upon the receipt of the testimony of
the police officer as to the admissions made by respond-
ent. In response to questions the officer stated that no
promises or inducements were held out by him; that no
threats were made, and that the statements made by
respondent were voluntary; that—

"I told him I did not come there to get any informa-
tion from him. He started to give me some, and I told
him he had better go to Mr. Stark [attorney for Wells,
Stone & Co.], and talk with him. I told him he was
under no obligations to tell me anything, and I did not
want any information. I asked him for the key to his

[1] See head-note 1 for a statement of what the record discloses.

desk. He wanted to know what I wanted of it. I told him I was going to look through his desk. He said I would not make anything by that. I told him I was ordered to get the key, and go look through his desk, and he said to me to see his mother; she would give the key. I told him, 'Why do you not talk with some of the company, and avoid all this trouble and notoriety?' and he said they had not given him any chance. 'Why,' I said, 'I supposed they had.' He says, 'No; they haven't said anything to me at all.' I said, 'Why do you not send for Mr. Stark, and talk with him?' 'Why,' he says, 'he ought to come and talk with me.'"

No testimony was offered by respondent bearing upon the question of the admissibility of the statements made to the officer. The testimony of the officer upon that point must be considered as a whole, and we think it sufficiently appears that respondent volunteered the talk, to warrant the admission of the testimony; that it was suggested to him that he should do his talking with the attorney for his employers, and that he was under no obligations to talk with the witness; and the only suggestion that savors of possible advantage was one that he might, by talking with the attorney, not with the witness, avoid trouble and notoriety.

Although the theft was alleged to have been committed on the 4th of April, it was entirely proper to show the condition of the vault on the morning of the 6th, when the proprietors were telephoned for by the respondent; that upon their arrival they found the bonds gone, together with the books and vouchers; and that the combination lock had been taken from the vault door.

The court was requested to instruct the jury as follows:

"1. The defendant is charged with the crime of larceny. Larceny consists of distinct elements: *First*, the unlawful and felonious taking; *second*, the carrying away; *third*, the goods of another; *fourth*, with the intent to convert the same to his own use; *fifth*, and the taking and carrying away must be without the consent of the

owner. To convict upon this charge, each element of the crime must be proved beyond a reasonable doubt.

"2. Where a reasonable doubt is entertained by anyone juror upon any one of the elements constituting the crime, the defendant must be acquitted.

"3. Where the property is charged and shown to belong to several owners, the people must show, beyond a reasonable doubt, the non-consent of all the alleged owners.

"4. In a criminal prosecution, nothing can be presumed against the defendant. The people must prove, beyond a reasonable doubt, the existence of every element and condition constituting the crime charged.

"5. The non-consent of each of the several owners of the property alleged to have been taken is a necessary element of the crime, and must be proved, like every other element of the crime, beyond a reasonable doubt.

"6. It is not for the defendant to prove the consent of the several owners, but for the people to prove the non-consent of the owners, and all of the owners, where there are several owners, beyond a reasonable doubt.

"7. It is necessary for the people to prove, beyond a reasonable doubt, at least the *de facto* existence of the railroad company issuing the bonds alleged to have been stolen.

"8. And the people must prove, beyond a reasonable doubt, that the bonds in the case were the genuine bonds of the company; that is, that the signatures of the president and secretary, by which the bonds are signed and authenticated, are the genuine signatures of the persons whose names are signed thereto as president and secretary."

"10. The defendant is presumed to be innocent of the offense charged, and that presumption is a complete shield until the people have introduced evidence to the jury, beyond all reasonable doubt, that he is guilty; that is, the jury must be satisfied, beyond all reasonable doubt, after properly considering all the evidence, that the defendant has committed the offense charged, before the jury can lawfully find the defendant guilty.

"11. A reasonable doubt is based on reason and common sense, and grows out of the testimony in the case. It is such a doubt as will leave one's mind, after a careful examination of all the evidence, in such a condition that he cannot say that he has an abiding conviction, to a moral certainty, of the defendant's guilt.

"12. Where circumstantial evidence alone is relied upon, every material circumstance or link in the chain of testimony must be proved beyond all reasonable doubt."

"15. If any one of the jurors, after a fair and careful consideration of all the evidence, has a reasonable doubt, based either on the evidence given, or a failure of evidence upon any material element of the offense, he should not find the defendant guilty."

The court instructed the jury as follows:

"Before the defendant can be found guilty, the jury, and each member of it, must be satisfied of his guilt, beyond a reasonable doubt, and this applies to each element of the crime. The term 'reasonable doubt' is so clear in itself, and so well expresses its own meaning, that any attempt to define it would seem unnecessary; but I have been requested by counsel for defendant to charge you, and I do so charge you, that 'a reasonable doubt is based on reason and common sense, and grows out of the testimony in the case. It is such a doubt as will leave one's mind, after a careful examination of all the evidence, in such a condition that he could not say that he has an abiding conviction, to a moral certainty, of the defendant's guilt.    *    *    *    Where circumstantial evidence alone is relied upon, every material circumstance or link of the chain of testimony must be proven, and beyond a reasonable doubt.' I do so charge you. The circumstances relied upon must not only be consistent with his guilt, but inconsistent with his innocence; and this applies to each link in the chain, for the chain itself is no stronger than the weakest link in it.    *    *    *

"Larceny has been defined to be the felonious taking and carrying away by any person of the goods and personal property of another, with the felonious intent of converting it to his own use and making it his own property, without the consent of the owner,—the word 'felonious' meaning that he has no color of right or excuse for the act. The intent must be, not to deprive the owner temporarily, but permanently, of his property.    *    *    *    According to all definitions, there must be a taking and carrying away; it must be with felonious intent; it must be the personal goods of another; and it must be without the consent, and against the will, of

the owner. * * * It has been contended here by counsel for the defendant that the proof is insufficient that consent to take these bonds was not given by the owners. Upon that point, gentlemen of the jury, I charge you that you may consider the entire evidence in the case, including that of the defendant, in determining whether or not consent was given by the owners. If the bonds were Wells, Stone & Co's., then upon the death of Wells and Stone the legal title and the right to the custody of the bonds passed to Ammi W. Wright, as the living, surviving partner. The interest of the executors was equitable only, and they could not take the bonds from the possession of Ammi W. Wright, or authorize it to be done. If it appears that the actual possession was in E. P. Stone, and the constructive possession was in Ammi W. Wright, if neither of them authorized the removal of the bonds, in the absence of any other evidence tending to show the contrary, that evidence, in the opinion of the court, is sufficient that the removal was unauthorized, and I so charge you, as a matter of law.

"I am requested by the defendant to charge you that it is necessary for the people to prove, beyond a reasonable doubt, at least the *de facto* existence of the railroad company issuing the bonds alleged to have been stolen, and I so charge you; but upon that point the people have given evidence tending to show that the Cincinnati, Saginaw & Mackinaw Railroad Company was completed from Durand to some point beyond Bay City, in this State, several years ago, and that it was equipped with rolling stock, and has actually been doing business for some years past as a railroad company. This fact alone is sufficient proof that it is a *de facto* corporation, at least.

"I am also requested by the defendant in this case to charge you that the bonds in the case must be shown to be genuine bonds of the company, and I do so charge you; but upon that point, if you find that the testimony of Ammi W. Wright, who claims to have been acting as the president of the railroad company, is true, in regard to the issuing of the bonds, and the testimony of Mr. Knowlton in regard to their delivery, and the other evidence produced by the people upon that point, then I charge you that such, if you believe it to be true, is sufficient to show that these bonds were legally issued, and that they were genuine, and would be the subject

of larceny, if stolen.    *    *    *    The defendant, of course, is not bound, by his defense, to show how the bonds were taken, or who took them."

It is clear that respondent's first, second, seventh, eleventh, twelfth, and fifteenth requests were given. The first paragraph of the fourth request and the first paragraph of the tenth were not given, while the other portions of these two requests were actually given. It appears from the record that the fourth request was read in the presence of the court and jury, and there discussed, till counsel was told there was no necessity for further argument upon that request, that it correctly stated the law, and that the court would so instruct the jury. It is true that the court, in the charge to the jury, said, referring to the general discussion by counsel:

"You may or may not have formed an opinion from that discussion in regard to what the law of the case is; but it is a part of the duty of the jury to take the law, not from the arguments of counsel, or from their own opinions, but from the court."

The opinion, however, respecting the fourth request, was that of the court, and not of the counsel.

Respecting the tenth request, it would seem that counsel, in framing it, regarded the second paragraph as the equivalent of the first. The reason why the jury must solve all reasonable doubts in favor of the accused is that the presumption of innocence is with respondent. The burden is upon the people to overcome that presumption of innocence by proof that will convince the jury, beyond all reasonable doubt, of respondent's guilt. The case should not be reversed simply because the court has failed to give the reason why such burden is imposed upon the people. Where neither instruction has been given, it would be error; but where the jury have been instructed that they must be satisfied, beyond all reasonable doubt, that the respondent has committed the offense charged, it cannot be said that the

respondent has been prejudiced by an omission to charge that the respondent is presumed to be innocent, especially where the court has already stated, in the presence of the jury, that in a criminal prosecution nothing can be presumed against the respondent.

Respecting the third, fifth, sixth, and eighth requests, there was no contest over the ownership of the bonds, or as to their genuineness, and no claim that they were taken by authority. Knight insists that he received them from Parsons, inclosed in a wrapper, in ignorance of the fact that the wrapper contained stolen bonds. Parsons claimed that he received the package from Knight, and that he was innocent as to what it contained. The theory of each was that it had been stolen by the other. Both denied having taken it from the vault. The bonds were offered and received in evidence without objection. They purported to have been duly and properly executed. Wright testified to their issue and value, and that he signed them as president of the railroad company. They were taken from the vault of Wells, Stone & Co. Wright was the survivor of that firm. Stone had charge of the business. Each testified that the bonds had been taken without his consent. A co-executor lived at Duluth, and another at Saginaw. Neither had anything to do with the management of the business. Suppose that an express train had been held up, the expressman bound and gagged, and $50,000 in money taken, and that a *posse* pursued and captured a masked pad, with the money in his possession. Would it be necessary, upon the trial, in addition to proof that the express messenger was in the employ of the express company, and had charge of the stolen money, to show that the agent sending, the agent to whom consigned, and the president of the company had not consented to the taking? It would seem not.

It was shown upon the trial that said railroad corporation had been operating its road for some time, and had issued the bonds in question. The respondent was

not prejudiced by the instructions given upon these subjects.

But as to some of the requests already referred to, and others which were refused, counsel for respondent do not, in their briefs, suggest in what respect the instruction given differs from the requests, or attempt to point out wherein the requests were not covered by the general charge; and the only point urged respecting them is that the respondent was entitled to have them given in the very language in which framed, subject to the sole proviso that the instructions stated the law correctly and that there was evidence to support them. We do not understand this to be the true rule. In *Fisher v. People*, 20 Mich. 135, it was held that the refusal of a specific request, although correct, is not error, if the written charge actually given fairly leaves to the jury the question substantially raised by the request. In *Leonard v. Pope*, 27 Mich. 145, it is said that it is not error to refuse to repeat, on separate requests, charges already fully given in an intelligible form. In *People v. Marion*, 29 Mich. 31, it is said that requests to charge may properly be declined where the points involved have already been covered. In *Hoyt v. Jeffers*, 30 Mich. 181, it was held that the refusal of requests to charge is not error, where their substance is embodied in the general charge. In *Sword v. Keith*, 31 Mich. 247, it was held that a party is entitled to have specific charges upon the law applicable to each of the various hypotheses or combinations of facts which the jury, from the evidence, might legitimately find, and which have not been covered by other instructions. This rule has been followed in a multitude of cases. Indeed, it has been reiterated in almost every volume of our reports. Some of the later cases are *O'Callaghan v. Boeing*, 72 Mich. 669; *Cooper v. Mulder*, 74 Id. 374; *People v. Jacks*, 76 Id. 218; *Babbitt v. Bumpus*, 73 Id. 331; *Shearer v. Middleton*, 88 Id. 621; *People v. Hubbard*, 92 Id. 322; *Stevens v. Pendleton*, 94 Id. 405; *Roux v. Lumber Co.*, 94 Id. 607; and *Ellis v. Whitehead*, 95 Id. 115.

Language seemingly inconsistent with this rule must be held applicable only to the circumstances of the case in which used.

The circuit judge, upon his own motion, instructed the jury that, if they were satisfied from the testimony that Parsons and Knight were associated in planning and perpetrating the crime, that fact would not make Parsons the less guilty because Knight was guilty also. We think that the facts disclosed by the record fully justified this instruction.

The judgment is therefore affirmed.

LONG, MONTGOMERY, and HOOKER, JJ., concurred. GRANT, J., did not sit.