PEOPLE *v.* RUBEL.

1. CRIMINAL LAW—ROBBERY—ADMISSIONS—ADMISSIBILITY.
   In a prosecution for robbery, where the record shows that
   defendant's rights were properly safeguarded, a state-
   ment made by defendant to the prosecuting attorney after
   his arrest, and taken down by a stenographer who testi-
   fied to its correctness, *held,* admissible.

2. ROBBERY—CO-OPERATION IN ROBBERY—EVIDENCE — QUESTION FOR
   JURY.
   Testimony that defendant rode to the scene of a robbery
   with the perpetrators thereof, that he waited in the
   automobile with the driver while the robbery was taking
   place, and that he then drove away with the robbers, *held,*
   sufficient, with other facts and circumstances, to take to
   the jury the question of whether he understandingly co-
   operated and aided in the perpetration of the robbery.

Error to recorder's court of Detroit; Cotter (Thomas
M.), J. Submitted October 12, 1922. (Docket No.
142.) Decided December 5, 1922.

Sylvan Rubel was convicted of robbery, and sen-
tenced to imprisonment for not less than 10 nor more
than 20 years in the State prison at Jackson. Af-
firmed.

*Thomas Mulvihill* and *George M. Lehman,* for ap-
pellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,*
Prosecuting Attorney, and *Z. L. Lewandowski,* Assist-
ant Prosecuting Attorney, for the people.

STEERE, J. Defendant was separately tried and
convicted in the recorder's court of Detroit under an

information charging him and three others named William Sawyer, Dea Jones and Robert Jones with having, on December 23, 1921, committed the crime of robbery on Alexander D. Licitar, manager for the Schulze Baking Company's store, located at 6052 Fourteenth street, near McGraw. It is undisputed that on the day in question the four men jointly charged rode together in an automobile driven by Robert Jones to near the Schulze Baking Company's store, where they stopped and waited until Licitar came out of the store carrying a package wrapped in a newspaper, when he was held up and robbed of several hundred dollars by Sawyer and Dea Jones who covered him with loaded revolvers, threatened his life and seized from him the package which contained money he was taking to a bank for deposit. The two robbers then ran to the waiting automobile, jumped in and were rapidly driven away by Robert Jones with whom Rubel had remained while the robbery was committed. In their rapid drive to escape the car skidded into the curb as they were turning a corner and smashed a wheel. Rubel, Sawyer and Dea Jones then jumped out and ran, but were soon captured by an officer to whom they were pointed out by a party who saw them escaping, and the package of money recovered.

Rubel's defense was that he took no part in perpetrating the robbery and did not know the others were out for that purpose. His counsel adhere to that contention and say in their brief:

"All the assignments of error can be grouped under the general proposition that the case should not have been submitted to the jury."

There was no claim on the part of the prosecution that Rubel physically participated in the direct act of robbery. Conviction was urged on the theory that he entered into a conspiracy with his associates

to commit the crime and was present, aiding and abetting under an agreement or concerted plan to that end, while his counsel contend the testimony falls so far short of showing he was in any way a party to an illegal agreement or conspiracy that a verdict should have been directed in his favor.

Rubel had formerly worked at the Schulze Baking Company's store under Licitar, leaving there in October, 1921. Dea Jones, who had pleaded guilty, was called as a witness by the prosecution and related the story of the hold-up somewhat in detail. He testified that Rubel came over with Sawyer to where he lived the morning when plans were perfected for the enterprise. The automobile was furnished by his brother Robert who was a jitney driver and they armed themselves before starting. His talks upon the subject were with Sawyer, who was the leading spirit, but Rubel was present in the room and could have heard what they said. On cross-examination he was asked:

"You don't know whether Rubel heard any part of that conversation or not?" and replied, "I am positive."

After telling of stopping in front of the baking company's store where they waited for some time, he was asked how he happened to get out of the automobile, and replied, "Well, I was told that this— Rubel just said, 'There is that guy now, if you want to get him,'" and then proceeded to relate how he and Sawyer did get him.

When arrested after fleeing from the scene of the crime in company with the actual hold-up men, who were yet armed and in possession of their booty, Rubel was taken in company with one of the Jones boys before the prosecuting attorney where they were interviewed. After being advised of his rights and informed that anything which he said might be used as evidence against him, Rubel was asked if he wanted

to tell what part he took in the hold-up and replied he took no part in it, but said he would give a truthful statement as to his presence in that vicinity. A stenographer in attendance took down in shorthand what was said, and upon the trial was called as a witness. He testified to the correctness of his minutes and was permitted by the court against objection to read the statement. The record shows defendant's rights were properly safeguarded and we find no error in the admission of the testimony.

In the course of his account of how he accompanied his associates that morning with no anticipation of what was in store, he was asked and answered as follows:

"Did you have any talk this morning about holding up the cashier of the Schulze Baking Company?

"*A.* No, sir, not until we got over there.

"*Q.* Did you have any talk before about going over there and holding up this cashier?

"*A.* Not with those two fellows. I talked with Sawyer that I needed the money.

"*Q.* Did you suggest this place in particular?

"*A.* He asked me if I knew any place. He suggested a place before and I wouldn't go and I told him about this place. * * * When we got over there we stopped on Fourteenth and Marquette so we could watch the door of the Schulze Baking Co. We waited about an hour or an hour and a half before any one came out. When the cashier came I didn't do anything. Sawyer and Dea Jones got out and the other fellow drove round the block on McGraw. The fellows that got out had guns."

Upon his trial defendant did not take the stand as a witness and this testimony stands undisputed. But eliminating the evidence as to his admissions there was abundance in the record both direct and circumstantial to carry the question of his having understandingly co-operated and aided in the perpetration of the robbery to the jury.

Upon the requisite proof to show conspiracy it is said in 2 Wharton's Criminal Evidence (10th Ed.), 1432 *et seq.*:

"The evidence supporting a conspiracy is generally circumstantial; it is not necessary to prove any direct act, or even any meeting of the conspirators, as the fact of conspiracy must be collected from the collateral circumstances of each case. It is for the court to say whether or not such connection has been sufficiently shown, but when that is done the doctrine applies that each party is the agent of all the others, so that an act done by one, in furthering the unlawful design, is the act of all, and a declaration made by one, at the time, is evidence against all."

The trial court in a clear and fair charge carefully went over the various phases of the case and explained to the jury the rules of evidence and presumptions protecting the rights of an accused in criminal trials, and with defendant's requests before him gave in exact or equivalent language their substance so far as competent.

No material error in the rulings or charge of the court being found, the conviction and sentence will stand affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.