PEOPLE v. ZEIGLER.

1. SEARCHES AND SEIZURES—AUTOMOBILES—PROBABLE CAUSE.
   The search of an automobile in a public place by an officer without a search warrant is unlawful if not based on probable cause to believe that a crime has been or is being committed and that evidence thereof is to be found in it.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5, 6]  47 Am Jur, Searches and Seizures § 18.
[3]  20 Am Jur, Evidence § 396.
[4, 5, 13]  47 Am Jur, Searches and Seizures § 19.
[7, 8, 11]  47 Am Jur, Searches and Seizures § 71.
[9]  47 Am Jur, Searches and Seizures § 10.
[10]  20 Am Jur, Evidence § 480.

2. SAME—PUBLIC PLACES—AUTOMOBILES—PROBABLE CAUSE.

An officer may search an automobile on the highway or in a public place when, from the exercise of his own senses or acting upon information received from sources apparently reliable, a prudent and careful person, having due regard for the rights of others, would be induced to the honest belief that a felony was being committed in such automobile.

3. CRIMINAL LAW—MOTION TO SUPPRESS—EVIDENCE.

Amplifying testimony later taken at trial cannot be considered in determining propriety of order denying an accused's motion to suppress evidence, it being necessary to determine probable cause from evidence taken at the preliminary examination.

4. SEARCHES AND SEIZURES—ANONYMOUS INFORMATION.

Anonymous information to a police officer does not afford a proper basis for establishing a claim of probable cause that a crime has been committed so as to authorize a search of the person of one accused of crime.

5. SAME—AUTOMOBILES—PERSON—WITHOUT WARRANT.

Search of automobile and of person of defendant, made without warrant and after he had been issued a summons for a traffic violation for failing to stop at a stop sign for a through highway, *held*, unlawful.

6. SAME—AUTOMOBILES—TRAFFIC VIOLATION.

A search of an automobile, if otherwise illegal because made without probable cause, is not rendered legal because of an arrest for a traffic violation.

7. SAME—WAIVER.

The right to be secure against unreasonable search and seizure may be waived.

8. SAME—WAIVER.

A person does not waive his constitutional right, while under lawful arrest, by a voluntary giving of consent to what otherwise would be an unlawful search or seizure.

9. SAME—PRIVACY—SELF-INCRIMINATION.

The law of searches and seizures has the dual purpose of protecting the privacy of the individual and of protecting him against compulsory production of evidence to be used against him.

10. EVIDENCE—VOLUNTARY CONFESSION—BURDEN OF PROOF.

Proof of confession is never admissible unless shown to have

been made voluntarily, and the burden is on the people to show that it was.

11. SEARCHES AND SEIZURES—WAIVER—EVIDENCE.

The waiver as to the right to a search may be presented for determination by the court when it is shown the accused was first advised of his rights, informed he need not submit to a search and that, if he did, the fruits thereof would be used in evidence against him, before he consented to the search.

12. CRIMINAL LAW—GAMING—EVIDENCE.

It was error to deny motion to suppress evidence as to possession of wagering memoranda taken from the person of defendant after he had been arrested for a traffic violation and consented to the search of his car but not his person, and motion to dismiss, where there does not appear to have been other evidence sufficient to sustain conviction (CL 1948, § 750.306).

13. SEARCHES AND SEIZURES—ARREST—IMMUNITY.

The fact of a lawful arrest, such as one for a traffic violation, does not automatically render constitutional any contemporaneous search and seizure nor does such an arrest create for the arrested party an immunity which would not otherwise be his, the constitutional test being whether or not under all the circumstances the search is unreasonable.

SMITH, J., dissenting.

Appeal from Van Buren; Mosier (Carl D.), J. Submitted June 12, 1958. (Docket No. 50, Calendar No. 46,933.) Decided January 4, 1960.

Donald Zeigler was convicted of possessing gambling material and memoranda. Reversed.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Luther I. Daines,* Prosecuting Attorney, for the people.

*James B. Stanley,* for defendant.

DETHMERS, C. J. This is appeal from conviction on a criminal charge of possession of policy or pool

books and other wagering memoranda.* Admissibility of evidence, in turn dependent upon the validity of a search and seizure, is the question presented.

Defendant was driving an automobile on a public highway. He was stopped by 2 police officers for failing to stop at a stop sign for a through highway. He was arrested and one of the officers issued him a summons for the traffic violation. The officers asked if he had any contraband in his car. He said, "No, go ahead and search the car." The car was searched but no contraband was found. Defendant was asked if he had contraband on his person, and he handed 1 of the officers 40 National Basketball Forecast cards, now labelled exhibit 1, which he had had in his outside overcoat pocket. The other officer asked defendant if he could search defendant's person. The officer testified that he did not recall that defendant answered. The officer then made a move toward defendant, reached into defendant's inside coat pocket and removed a memorandum book, now marked exhibit 2, which listed bets or wagers. Defendant "was reluctant to give the book up," "didn't want to let it go" and "made a motion to pull it back." The officers removed from defendant's wallet certain newspaper clippings containing the results of basketball games. These are marked exhibit 3. These 3 exhibits were received into evidence over defendant's objection at the preliminary examination. After he was bound over for trial, he moved to suppress this evidence. The motion was denied. At trial the exhibits were received into evidence over objection. On appeal he claims error in denial of his motion to suppress and in receiving the exhibits into evidence.

The people agree with defendant that search of an automobile by an officer without a search warrant

---

* See CL 1948, § 750.306 (Stat Ann 1954 Rev § 28.538).—REPORTER.

is unlawful if not based on probable cause to believe that a crime has been or is being committed and that evidence thereof is to be found in it. Both quote in that connection from *People* v. *Miller,* 245 Mich 115, 118:

"In applying the test to modern conditions, this Court has held that an officer, charged with enforcement of the law, may search an automobile on the highway or in a public place when, from the exercise of his own senses or acting upon information received from sources apparently reliable, a prudent and careful person, having due regard for the rights of others, would be induced to the honest belief that a felony was being committed in such automobile."

But it is not enough for an officer to testify that he had acted upon information received from sources which, in his judgment, were apparently reliable. The *Miller Case* makes it clear that testimony of the officer's determination of the reliability of the source of his information, without disclosing that source to the court, does not suffice to establish the existence of probable cause. Having stressed (p 117) that "the officer did not give the source of his original information nor identify his informant" this Court went on (p 118) to say, in *Miller,* that "anonymous information does not meet the test," citing *People* v. *Guertins,* 224 Mich 8, and reversed the conviction on the ground that it rested on "evidence obtained by illegal search."

What about probable cause in the case at bar? The only showing before the circuit court on the motion to suppress consisted of the testimony presented at the preliminary examination. Amplifying testimony later taken at trial cannot be considered. We are limited to that taken at the examination. *People* v. *Miller, supra.* With respect to all such testimony concerning complaints or tips about de-

fendant received by the officers before the arrest, it must be said, as in *Miller,* that "the officer did not give the source of his information nor identify his informant." In fact, when defendant's counsel questioned the officer, at the preliminary examination, as to the source of his information, he replied that it was confidential, and the examining magistrate sustained the prosecuting attorney's objections to defense counsel's further questioning on the subject. As said in *Miller,* then, the anonymous information did not meet the test. There was no other information, free from the infirmity of being anonymous, disclosed to the court by the officer on which a claim of probable cause for the search could be planted. Probable cause was not established.

It is for good reason, then, that the people, while not expressly conceding that the search and seizure in this case cannot be upheld on the ground of probable cause, nowhere contend, in their belief or otherwise, that it can be so upheld. In their brief they say:

"Nor, do we argue with counsel when he says that anonymous information fails to meet the test. *People v. Guertins,* 224 Mich 8. We believe, and it is our claim that the record will bear us out, that here we have a motorist who was observed in a traffic violation, was issued a summons, identified by the officers as one against whom they had received reliable and confidential information, whereupon the simple question was asked of him whether he had any contraband in his car or on his person. Without hesitancy the defendant promptly handed over 40 National Basketball Forecast cards. The record fails to show that this was merely submissive search as defendant would contend. The reasonable conclusion is that the defendant acted freely and voluntarily when he told the officers to conduct the search and when he handed the cards to Detective Menzies. He told the officers he had more cards at his home in Kalamazoo,

and permitted his mother and sister, accompanied by a Kalamazoo detective to go to his home and obtain them. Defendant then, in detail, explained how the cards were played, even to obtaining the results of games on TV and in newspapers. *By consenting to the search, defendant waived his constitutional rights."*

From this, it is clear that the people predicate their claim of admissibility of the questioned evidence upon defendant's alleged waiver of constitutional rights, and not at all on the grounds that there had been a valid search and seizure based on probable cause.

Were the search and seizure lawful because made while defendant was lawfully under arrest for traffic violation? For reasons stated in the majority opinion of Mr. Justice EDWARDS in *People* v. *Gonzales,* 356 Mich 247, applicable here, we hold in the negative. In that opinion the announced principles determinative of the legality of a search made, without a search warrant, contemporaneously with a lawful arrest, were drawn from *Agnello* v. *United States,* 269 US 20 (46 S Ct 4, 70 L ed 145, 51 ALR 409). True it is that in *Agnello* the search which was held to be illegal was of a house and the court noted a distinction in that respect from *Carroll* v. *United States,* 267 US 132 (45 S Ct 280, 69 L ed 543, 39 ALR 790), where the court upheld a search, without a warrant, of an automobile. It is to be noted, however, that the distinction made on that account between search of a house or of an automobile related to the requirement of a search warrant, but not at all to the need for probable cause, the court recognizing in *Carroll* that even the search, without a search warrant, of an automobile is unlawful unless made upon probable cause. As said in *Henry* v. *United States,* 361 US 98 (80 S Ct 168, 4 L ed 2d 134).

"The fact that the suspects were in an automobile is not enough. *Carroll* v. *United States, supra,* liberalized the rule governing searches when a moving vehicle is involved. But that decision merely relaxed the requirements for a warrant on grounds of practicality. It did not dispense with the need for probable cause."

Furthermore, the evidence challenged in the instant case derived not from the search of the automobile but of defendant's own person. Let it be understood that we do not hereby hold—nor did we so say in *Gonzales*—that a lawful search of an automobile, based upon probable cause, is rendered illegal by an attending arrest for a traffic law violation, but only that a search, if otherwise illegal because made without probable cause, is not rendered legal by such arrest.

The people contend, however, as above noted, that defendant voluntarily waived the right to be secure against unreasonable search and seizure by telling the officer to search his car and by himself removing the 40 forecast cards from his pocket and handing them to the officer. In this connection the people quote, with respect to the constitutional right to be secure against unreasonable search and seizure, the following from *Zap* v. *United States,* 328 US 624, 628 (66 S Ct 1277, 90 L ed 1477):

"But those rights may be waived."

Involved in *Zap* was a contract between the United States government and Zap under which he was to do experimental work for the navy. The contract provided that the government was given the right, also conferred by statute, to examine his books and records. In exercising that right the government discovered evidence later used against him in a prosecution for pressing a, false claim for payment against the government. Such were the circum-

stances under which Zap was held to have waived
his right with respect to search and seizure. This
is not such a case. Rather, in point is *Amos* v.
*United States,* 255 US 313 (41 S Ct 266, 65 L ed
654). In that case officers went to defendant's home,
did not find him but did find his wife present and
told her that they were revenue officers and that
they had come to search the premises "for violations
of the revenue law." Thereupon the wife opened
the door to the officers, and they searched his home
and store, finding incriminating evidence. The court
held (p 317) that "under the implied coercion" thus
presented no such waiver could be held to have been
"intended or effected," that the search was unlawful,
and the evidence thereby obtained improperly re-
ceived. And so here, where defendant was placed
under arrest, the officers asked him for contraband,
searched his car, to which he assented, and, having
found nothing, asked to search his person, to which
he did not consent, and defendant then handed over
the cards but objected to the officer's taking the
memorandum book from his pocket, such consent as
was given under such circumstances should not be
regarded as voluntarily given, and it must be held
that no waiver was intended by defendant nor did
one occur.

This is not to say that under certain circumstances
it may not be held that a person has waived his con-
stitutional rights, while under lawful arrest, by vol-
untary giving of consent to what otherwise would
be an unlawful search or seizure. As the court ob-
served in *Zap,* however, the law of searches and
seizures, as revealed in that court's decisions, is the
product of the interplay of the 4th amendment's
guaranty against unreasonable search and seizure
and the 5th amendment's guaranty that no person
shall be compelled in any criminal case to be a wit-
ness against himself, its dual purpose being to pro-

tect the privacy of the individual and to protect him against compulsory production of evidence to be used against him. *Boyd* v. *United States,* 116 US 616 (6 S Ct 524, 29 L ed 746); *Weeks* v. *United States,* 232 US 383 (34 S Ct 341, 58 L ed 652, LRA 1915B, 834). Proof of confession is never admissible unless shown to have been made voluntarily, and the burden of proof is on the people to show that it was. *People* v. *Brockett,* 195 Mich 169. Confessions have been held to have been made voluntarily and to be admissible, as in *People* v. *Simpson,* 48 Mich 474, *People* v. *Parsons,* 105 Mich 177, and *People* v. *Rubel,* 221 Mich 142, when the proofs showed that the officers to whom the confessions were made first advised the confessor of his rights, told him that he was under no obligation to talk at all and cautioned him that his statements would be used as evidence against him. As said in *People* v. *Brockett, supra* (p 179):

"We do not mean to hold that a voluntary confession may not be made by one charged with crime and under arrest, for such confessions often have been admitted, and will be admitted by the courts as competent, but they should come from the defendant under such circumstances as show them to be made of his free will, and with full and perfect knowledge of their nature and consequences, free from the dictation and coercion of others."

Such are the safeguards thrown around admission into evidence of confessions, to help insure their voluntary character. And so, with respect to incriminating evidence, other than confessions, obtained by search and seizure, under a conceivable showing of facts, such as, *inter alia,* that the accused was first advised of his rights, informed that he need not submit to a search and that, if he did, the fruits thereof would be used in evidence against him,

his consenting to the search and seizure may well, in the absence of contrary indications, be held to be voluntary, not an involuntary act secured under coercion, and, hence, a waiver of his constitutional rights, rendering such evidence admissible. Such are not the facts here. There being no conflict of testimony or uncertainty as to the circumstances under which the search and seizures here were made and under which defendant handed over the cards, the question of the voluntariness of his acts in that regard was one for determination by the court. *People* v. *Barker,* 60 Mich 277 (1 Am St Rep 501); *People* v. *Prestidge,* 182 Mich 80; *People* v. *Mc-Clintic,* 193 Mich 589 (LRA1917C, 52).

The exhibits in question should not have been received at the preliminary examination nor at trial. The motion to suppress made in circuit court before trial should have been granted. Without the exhibits there was insufficient evidence to warrant binding over, much less to convict. Accordingly, the motion to dismiss, presented contemporaneously with the motion to suppress, also should have been granted. The sentence must be vacated, the verdict set aside, the case dismissed, and defendant discharged.

CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with DETHMERS, C. J.

SMITH, J. (*dissenting*). In this case 2 State police officers were in possession of information, from a source considered to be reliable, that the defendant was engaged in "picking up bets." They were given the name and color of his car, and were told that he had just left the village of Bangor and was proceeding east on M-43. At the intersection of M-40 and M-43 Detective Sergeant Beck "observed this car from a description given by the chief. I knew it was about time for it. I was sure of it

after I saw the license plate. It was the same color the chief told me about and that is why we followed the car and also because of nonstop at the highway."

It is the search of the defendant, after the car had been "curbed" about a mile past the intersection, for violating a stop sign, that a majority of this Court characterizes as unreasonable and in violation of the defendant's constitutional rights.

I do not agree. I regard such holding as ill-considered, unwarranted by the constitutional provision, and unjustified by any respectable precedent. Moreover, if a police officer cannot arrest and search on the basis of such information then we indeed make this State a happy hunting ground for those evilly disposed. I would remind my brethren that constitutional rights travel a 2-way street. The law-abiding citizens have constitutional rights as well as the hoodlums and to the degree that we enlarge the one we restrict the other. Our problem is one of balance, and I question the kind of balance here achieved by the majority.

In more detail, Detective Sergeant Beck of the State police testified as follows:

"*Q.* I'll further ask you, Mr. Beck, if you had any occasion to receive a complaint regarding the activities of the defendant?

"*A.* Yes, I have received at least 2 complaints.

"*Mr. Stanley:* I'll object to that general question, about complaints about the defendant. It's immaterial in this case.

"*The Court:* The fact that he received a complaint about the defendant may stand. Any further testimony which might tend to show a conversation would be hearsay, and will be out.

"(Witness continuing):

"I have received at least 2 complaints on him, the first one on January 21, 1955 and the second complaint on February 5, 1955. I made a routine

check on the subject upon receiving the complaint of January 21st and upon receiving the complaint of February 5th we received a call that Mr. Zeigler was proceeding east on M–43 and he had just left the village of Bangor and Mr. Menzies and myself proceeded toward the intersection of M–40 and M–43 and just as we got to that intersection we noted a bluish-colored Plymouth proceeding through the intersection without making a stop. We turned east on M–43 and followed that car for approximately a mile and the car was curbed. The identity of the man became known to us as Donald Zeigler. He was then interviewed."

Upon cross-examination we find the following:

"*Q*. Were these complaints you talk about to the effect the defendant had committed a felony and was wanted for a felony somewhere?
"*A*. The complaints came from—
"*Mr. Stanley:* I object, not responsive.
"*Q*. Were they, or were they not?
"*A*. Yes.
"*Q*. What was the felony?
"*A*. That he was picking up gambling bets.
"*Q*. Was there a warrant out for that?
"*A*. No warrant out for him, the case was being investigated at that time. We had reasons to believe a crime was being committed and he was doing it.
"The chief never told me there was a warrant out for him. I knew of no specific crime that the defendant had committed except what the chief had told me. He did not give me the name of the place that the bet was being picked up at. He told me the man was in Bangor making pick-ups of bets and told me to find out who he was and what he was doing. He gave me the name and color of the car."

Our majority rejects all of the above as constituting probable cause for making the search complained of, primarily upon the ground that the in-

formation received was anonymous information. Rarely has the betrayal of justice by the easy seduction of words been more apparent than in this case. Here the word that solves everything for our majority is the word "anonymous." We are told that "anonymous information does not meet the test" (of probable cause), citing *People* v. *Miller,* 245 Mich 115, 118. In the case before us the information is said to be "anonymous" because "the officer did not give the source of his information nor identify his informant." This is a complete distortion of the doctrine of anonymity as applied to the search problem. If the information reaching the officer of the commission of a crime is definite, certain, and apparently trustworthy, the officer acts upon probable cause even though the informant refuses to state his name, is silenced before his name is disclosed, recites a fictitious name, or, indeed, gives his name as Smith or Jones. *Per contra,* the disclosure of an informant's name will not furnish the officer with probable cause should the information, reasonably appraised, be fanciful or absurd. This is the real meaning of "anonymous" as that term is used in the law of search. I find nothing in *People* v. *Miller, supra,* properly analyzed to the contrary. If there is, it should be overruled. Here the information was apparently authentic, reliable, and precise, and the officers acted reasonably in moving promptly upon its receipt. The fact that the name of the informant was not made known at the preliminary examination (because said to be confidential) is, upon these facts, utterly immaterial. The informant's name is only one of the factors bearing upon whether or not the officer, as a reasonably prudent person, having due regard for the rights of others, would be induced to the honest belief that a crime was being committed. The information may have all the earmarks of authenticity even though the informant's name is

not disclosed, or it may be utterly and obviously worthless even though the name is repeated over and over. It cannot be the law that officers of the law, given certain facts apparently reliable and trustworthy, may remain quiescent in the station house if their informant refuses to disclose his name, but must be galvanized into immediate action if the informant adds that his name is John Doe.

Nor can I agree with the majority that the people did not rely upon the presence of probable cause for the officers' action. They summarize to us the claims of the defendant respecting the search under 3 heads, first, lack of sufficient information on the part of the officers that defendant was committing a crime prior to the search, second, "that even if the officers did have information, such information was of an anonymous character," and, third, that defendant could not have waived his constitutional rights. In partial answer to the above the people point out that the defendant was "identified by the officers as one against whom they had received reliable and confidential information." If this is not an argument in answer to the defendant's probable cause assertions, its purpose escapes me.

Having thus eliminated probable cause, the majority then views the case as involving the following question: "Were the search and seizure lawful because made while defendant was lawfully under arrest for traffic violation?" In answer we are told that, for reasons stated in the case of *People* v. *Gonzales,* 356 Mich 247, it was not.

In the *Gonzales Case* we were confronted with the search of a car in which firearms were being carried illegally. The admissibility of such evidence is governed by a specific constitutional amendment.* If the amendment itself is valid, and we held that it

---

* Const 1908, art 2, § 10, as last amended in 1952.

was, that ends any question as to the admissibility of the evidence. The constitutional provision was clear and specific. It was neither necessary to the development of grounds of decision, nor desirable as a matter of policy, that we venture into search and seizure areas not covered by the amendment. The problems are too delicate and complex to be the subject of broad dicta. The welfare of the bulk of our people and the conduct of the entire law-enforcement personnel of the State are both involved.

Nevertheless the majority of our Court seized upon the case to lay down the law concerning what it described (p 250) an "important question," namely, "may police who stop an automobile on a Michigan highway to issue a traffic ticket also routinely search the automobile under Michigan law?"

In our concurring opinion in *Gonzales* we refrained from examining this question on its merits in the hopes that the Court would, upon receipt of our demurrer, confine its opinion to the facts of the case then before it. The Court obviously did not care to so restrain itself and we now feel free to examine the question on its merits.

On the substance of the question (we shall reach in due course its procedural place under Anglo-American law), its primary deficiency, which is even now causing error, is that it is loaded with ambiguities that cannot be resolved. Why? Because, framed abstractly in terms of "routine" search, then answered abstractly with language in opinions divorced from the facts of the cases in which they were expressed, it fails to marshal the experience of the courts. Not all search and seizure cases will respond to the same analysis. All modern courts employ a common point of departure, an abhorrence of unrestrained police license. On lofty phrases of high principle condemnatory thereof we

can all agree. But, as has been well said, generalities, sound though they may be, will not answer specific problems. The automobile presents peculiar problems of its own with respect to crime, and they cannot be solved by quotation of routine generalities from a house-search case such as *Agnello* v. *United States,* 269 US 20 (46 S Ct 4, 70 L ed 145, 51 ALR 409).

If we attempt to apply the question put and answered in *Gonzales,* framed in terms of a "routine" search, we are in a morass of ambiguity at the very outset. A few simple illustrations will suffice. Suppose the officers stop a car for traffic violation, "to issue a ticket" as the question puts it, and nothing more. While stopped they observe something to excite their suspicions that the driver may be involved in commission of a crime. It may be no more than a bloody rag, or a single stick of dynamite. Is a search now offensive to constitutional principles? If it be answered that this is no longer a "routine" search, what is the meaning of routine? What are its limits?

The officers, indeed, may be warned by the police chief of a neighboring city that a man believed to be engaged in picking up bets is proceeding east on M–43 in a blue Plymouth. While following the car it is observed to run through a stop sign. The officers are now, under the wording of the hypothetical question, in a dilemma. May they stop it "to issue a traffic ticket"? If so, are they precluded from searching? If, again, it be held that under these circumstances the search is not routine, I again ask: What does "routine" mean?

The question, of course, may have envisioned an elderly couple driving the family sedan home from a church social, arrested for failure to yield the right-of-way in a blinding snowstorm. May their car be "routinely" searched? Upon these facts, and

nothing more if search is made, a gross invasion of constitutional rights would seem to have been suffered. But we have yet to find such a case in the books.

But our major objection is not the inherent ambiguities of the question employed but arises from considerations far more basic. The formulation of rules of conduct for the future, as answers to abstract questions, is not the way of the common law.

The common-law reasons from case to principle. As Dean Pound puts it: "It is a traditional art of judicial decision; a traditional technique of developing the grounds of decision of particular cases on the basis of reported judicial experience, just as the civilian has a traditional art of construing legal texts and a traditional technique of developing the grounds of judicial decision therefrom."* When we abandon the technique of the common law, and are precluded by our form of government from adopting the technique of the civil law, we invite egregious blunder of the magnitude here committed. Here our majority holds, not upon a firm foundation of factual precedent, but upon the authority of a quivering mass of dicta, that the police cannot search, after arrest for a traffic violation, a car and driver they have been reliably informed are engaged in the commission of crime.

What is the law governing search on the facts before us? Does the fact that a traffic violation was involved give such violator some kind of immunity to search that other suspected criminals do not enjoy? The truth of the matter is that the fact of a precedent traffic violation is no more than one of the surrounding circumstances, and oftentimes an immaterial circumstance at best. We might have a traffic violation or a narcotic violation, a jay-walk-

---

* The Theory of Judicial Decision, 36 Harv L Rev 641, 648, 649.

ing violation or a homicide violation. The crucial issue is not the kind of law violated, nor indeed the arrest itself, but the reasonable necessity, under all of the circumstances, for making the search complained of without a warrant. The housewife arrested for jay-walking across Main street, or arrested for making an illegal left turn thereon, may not normally be searched upon being arrested for such offense. Not because she is a housewife, nor because it was a mere offense against the traffic laws, but because under the circumstances presented there is no reasonable necessity for the search. We should not attempt a formulation of greater precision. At the one extreme it is clear that a search made solely upon caprice is not reasonably justified by the circumstances. Yet, at the other extreme, we will not demand of the officer that he weigh the circumstances confronting him with the detachment and precision of a laboratory technician while the seconds may be ticking away his span of life. No more is required of him than that he act with the prudence and reason demanded of any responsible official in the conduct of his duties, in the light of the surrounding circumstances.

We need not cite extensive authority in a field where the great jurists have written so trenchantly. Holmes may be found in *Olmstead* v. *United States,* 277 US 438, 469 (48 S Ct 564, 72 L ed 944, 66 ALR 376), Brandeis in the same case at page 471, Cardozo in *People* v. *Chiagles,* 237 NY 193 (142 NE 583, 32 ALR 676), to mention but a few of the authorities available. The leading automobile search case is *Carroll* v. *United States,* 267 US 132 (45 S Ct 280, 69 L ed 543, 39 ALR 790), wherein are discussed some of the peculiarities of the automobile problem. The case of *United States* v. *Rabinowitz,* 339 US 56 (70 S Ct 430, 94 L ed 653), contains the most comprehensive of the recent discussions of the topic.

No study of the English authorities should omit the case of *Leigh* v. *Cole* (1853), 6 Cox's Criminal Cases 329, on the point of necessity.

Viewed in the light of the principles hereinabove set forth there was ample justification for the search here made. The sentence should be affirmed.

EDWARDS, J. (*concurring*). The freedoms which we cherish for ourselves from our American heritage frequently require an uncomfortable amount of consideration for the rights of others whom we deem unworthy of them. Mr. Justice Holmes, in a First Amendment case, stated the matter in its most dramatic form:

"If there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought—not free thought for those who agree with us but freedom for the thought that we hate." *United States* v. *Schwimmer,* 279 US 644, 654, 655 (49 S Ct 448, 73 L ed 889).

And in a recent Fourth Amendment case, Mr. Justice Douglas said:

"It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest." *Henry* v. *United States,* 361 US 98 (80 S Ct 168, 4 L ed 2d 134).

Our concern in this case is with the freedoms described in the latter constitutional amendment, particularly as they are re-enacted in the Constitution of the State of Michigan:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause,

supported by oath or affirmation." Mich Const (1908), art 2, § 10.

Thus, in every search and seizure case, the basic question to be answered is whether or not the search was "unreasonable" in constitutional terms.

The courts are unanimous in holding that this determination must be made as of the time the search is to occur, and not in the light of knowledge gained thereby.*

In the recent decision in *People* v. *Gonzales,* 356 Mich 247, the sole justification for the search upon which that case hinged was the arrest of the driver for issuance of a traffic ticket for driving with 1 headlight out. This Court there held, for reasons adequately stated in the majority opinion:

"The fact of a lawful arrest does not, in our view, automatically render constitutional any contemporaneous search and seizure. The constitutional test is still whether or not under all the circumstances the search is 'unreasonable.'" *People* v. *Gonzales, supra,* p 253.

*Gonzales* did decide that a lawful traffic arrest did not by itself authorize a contemporaneous search of the automobile as a matter of routine police policy. Certainly it may not be read as suggesting that the fact of a lawful traffic arrest creates for the arrested party an immunity from search which would not otherwise be his.

In the instant case, we again deal with a search following the arrest of the driver of an automobile, this time for his failure to observe a stop sign. The search in this instance is the search of the person of defendant.

---

* *Henry* v. *United States,* 361 US 98 (80 S Ct 168, 4 L ed 2d 134); *Johnson* v. *United States,* 333 US 10 (68 S Ct 367, 92 L ed 436); *Byars* v. *United States,* 273 US 28 (47 S Ct 248, 71 L ed 520).

What appears to divide this Court in the present matter, however, is a dispute about whether or not (over and above the traffic ticket aspect) this record afforded ground for the searching officers to have probable cause to believe a felony was being committed.

This determination should, of course, be made on the basis of what "reasonable and prudent men, not legal technicians" would think from the facts presented at the time. *Brinegar* v. *United States,* 338 US 160, 175 (69 S Ct 1302, 93 L ed 1879).

See, also, *Carroll* v. *United States,* 267 US 132, 149 (45 S Ct 280, 69 L ed 543, 39 ALR 790) ; *Draper* v. *United States,* 358 US 307, 313 (79 S Ct 329, 3 L ed 2d 327).

In the instant case, the facts within personal knowledge of the police officers at the time of the traffic arrest certainly did not constitute probable cause to believe that defendant was committing a felony.

The dissenting opinion finds probable cause by citing police testimony as to claimed facts supplied by anonymous information. This Court has previously held that unconfirmed anonymous information is not a basis for "reasonable belief" that a crime was being committed. *People* v. *Guertins,* 224 Mich 8, 10.

See, also, *People* v. *Miller,* 245 Mich 115.

Presumably for this reason, the attorney general's brief did not argue the issue of probable cause.

It is obvious that if we abandon the anonymous information rule of the *Guertins Case,* we make available to the searching officer an unchallengeable answer to any complaint about violation of the Fourth Amendment.

Such a change would place the enforcement of the Fourth Amendment entirely on the conscience of the

individual policeman and beyond the review of the Court.

I concur in and sign the opinion of the Chief Justice for the reasons given therein and herein.

DETHMERS, C. J., and KELLY, BLACK, VOELKER, and KAVANAGH, JJ., concurred with EDWARDS, J.